OPINION OF THE COURT
Gerard M. Weisberg, J.
This is an action for the malicious prosecution by and negligence of employees of the New York State Department of Motor Vehicles (DMV). The issues to be decided are whether the administrative adjudication of traffic infractions can serve as the predicate for a malicious prosecution action or, alterna *102 tively, whether the State can be cast in damages for promulgating a system which required claimant to make numerous court appearances, and which cost him his job, notwithstanding his innocence.
Claimant’s problems began on November 30, 1985. On that date his apartment was burglarized and he discovered that his driver’s license was missing. On December 7, 1985, claimant reported the loss to the DMV and filed an application for a duplicate license which he received on December 12, 1985.
That notwithstanding, commencing on May 30, 1986, claimant received at least three driver license suspension orders issued by the Commissioner of Motor Vehicles predicated on his having defaulted in answering traffic summonses. Claimant was then employed as a parking lot attendant and his livelihood depended on his maintaining his license. He therefore arranged for time off from work and went to the DMV on June 6, 1986 where he spoke to the assigned field investigator, Patricia Ferguson. He explained that he had reported his license lost months before and that he had not received the summonses because they had been served on whoever was using his lost license illegally.
The investigator’s response was that he would either have to pay the fines or arrange to meet with each police officer who had issued a summons, either before or at the hearing, so that the officer could verify that claimant had not been driving.
Claimant found both alternatives unacceptable. While he could have had the suspension vacated by paying the outstanding fines, or posting security therefor (see, 15 NYCRR 125.1), they were not his violations. Moreover, once the suspension was removed from the computer records, claimant felt there would be no chance of the police apprehending whoever was using his license. Violations could therefore continue to be incurred indefinitely. Nor could claimant arrange to meet with an ever increasing body of police and traffic personnel who had and would be issuing summonses against his license. He therefore elected to continue driving with a suspended license and contested the tickets before the Parking Violations Bureau.[1]
*103 In the claim, it is alleged that 11 summonses had been issued which were resolved as follows: 9 not guilty verdicts and 2 dismissals. At trial, appearing pro se, claimant actually proved that 5 summonses had been issued, at least 4 of which were resolved in his favor after 11 court appearances.
It is claimant’s position that it was a malicious abuse of discretion for the investigator to refuse to drop the prosecutions after claimant had pointed out that he had reported his license lost prior to their commencement. Alternatively, he argues that the system which allowed summonses to be issued against him under such circumstances was negligently conceived. Finally, claimant posits that inasmuch as his license had been suspended, the police should have arrested whoever was using it illegally instead of only issuing summonses.
The elements of a cause of action for malicious prosecution are: (1) the commencement or continuation of a criminal proceeding or civil proceeding where a provisional remedy was granted or other interference with claimant’s person or property established; (2) termination of the proceeding in favor of claimant; .(3) the absence of probable cause; and (4) actual malice. (Broughton v State of New York, 37 NY2d 451, 457, cert denied sub nom. Schanbarger v Kellogg, 423 US 929.)
Pursuant to section 155 of the Vehicle and Traffic Law, the provisions which claimant was accused of violating are not crimes but only "traffic infractions” triable before administrative tribunals. The threshold inquiry therefore is whether these proceedings may serve as the predicate for a malicious prosecution action.
Prior to 1980, it appears that proceedings before an administrative bureau were insufficient to satisfy the first element of this cause of action. (Al Raschid v News Syndicate Co., 265 NY 1.) Since that time, however, the Appellate Division, Third Department, has broadened the rule to include certain administrative proceedings. (See, Groat v Town Bd., 73 AD2d 426, appeal dismissed 50 NY2d 928.) The Court of Appeals has yet to reconsider the issue. (See, Arteaga v State of New York, 72 NY2d 212, 229.)
In Groat (supra), plaintiff police officer was charged with misconduct, suspended without pay, tried before a Hearing Officer and dismissed from the police force by the Town Board. *104 Plaintiff commenced a proceeding pursuant to CPLR article 78 which successfully challenged this determination. After his reinstatement he sued the Town Board for malicious prosecution.
The Appellate Division held that this alleged a viable cause of action ruling: "In our opinion, administrative proceedings which require a hearing and trial of the issues on evidence and testimony under oath, with the right of cross-examination, have sufficient attributes of judicial proceedings to be considered judicial proceedings for the purposes of a cause of action for malicious prosecution [at least where plaintiff’s person or property has suffered interference].” (Groat v Town Bd., 73 AD2d 426, 429, appeal dismissed 50 NY2d 928, supra;)
Here, claimant was forced to appear at no less than five administrative trials, at least four of which terminated in his favor. If he had not appeared it could have resulted in his arrest and imprisonment. (See, Vehicle and Traffic Law § 511; 15 NYCRR 123.5, 124.8; Squadrito v Griebsch, 1 NY2d 471; Matter of Coville v Bennett, 57 Misc 2d 838.) At the trials, evidence was required to be submitted, including testimony under oath with a right of cross-examination. (15 NYCRR 124.4; see also, People v Byron, 17 NY2d 64.) Pending claimant’s vindication, his license, which was necessary in order to maintain his means of livelihood, was suspended. As was stated by the Third Department in Groat: " 'When one’s livelihood depends upon a public license, it makes little difference to him whether it is taken away by a court or by an administrative body or official.’ ” (Groat v Town Bd., 73 AD2d 426, 429, appeal dismissed 50 NY2d 928, supra, quoting Melvin v Pence, 130 F2d 423, 426.) We find the proceedings here were sufficiently judicial and burdensome in nature to satisfy the first element of the tort of malicious prosecution. (See also, People v Phinney, 22 NY2d 288.)
To be successful, claimant must also establish that the proceedings were commenced[2] or continued with actual malice and without probable cause. (Callan v State of New York, 73 NY2d 731.) Probable cause requires a reasonable objective belief that an offense has been or is being committed. (People v *105 Bigelow, 66 NY2d 417.) Malice means conscious falsity, although it may often be inferred from the absence of probable cause. (Munoz v City of New York, 18 NY2d 6.)
Here, it is not disputed that someone repeatedly violated the Vehicle and Traffic Law while using claimant’s license. Probable cause therefore existed for the issuance of the tickets. Moreover, Patricia Ferguson testified that on past occasions motorists had fraudulently reported their licenses lost or stolen and then continued to use them illegally. It is, therefore, DMV’s policy generally not to drop a prosecution based only on the motorist’s license having been lost prior to the issuance of the summons. Seeing no reason not to, she adhered to that policy in claimant’s case.
Arrests predicated on erroneous information contained in police or other computer records are generally not supported by probable cause. (See, e.g., People v Jennings, 54 NY2d 518; People v Lent, 92 AD2d 941.) But this is not such a case. Violations had been committed by someone holding a license and the license was claimant’s. While he offered a defense, it was not incontrovertible on its face. Claimant could have been lying about losing his license and the violations could have been his. A reasonable police officer was entitled to seek verification. (Gisondi v Town of Harrison, 72 NY2d 280.) Until supplied, probable cause to continue the prosecution remained (Callan v State of New York, 73 NY2d 731, supra) both negating and mooting the question of malice.[3]
With respect to negligence, while the State can be liable for ministerial errors in record keeping (see, Ford Motor Credit Co. v State of New York, 133 AD2d 980; Glowinski v Braun, 105 AD2d 1153; Saunsen v State of New York, 81 AD2d 252); here its records were accurate. Claimant’s complaint is directed to the system itself; not that the information supplied is wrong, only insufficient. Arguably, if pictures were required on licenses, as they now are,[4] or if a new identification number had been issued immediately, his lost license could have been recovered the first time it was used. While this may be true, *106 the decision as to the form of driver’s license to be used by the approximately 10 million licensed drivers in this State (see, World Almanac & Book of Facts 1989, 190) and the criteria for the issuance of new identification numbers is discretionary and quasi-legislative in nature and susceptible to differing acceptable results. It is therefore immune and cannot form the basis of a finding of liability predicated on negligence. (Tango v Tulevech, 61 NY2d 34; Chung v State of New York, 122 Misc 2d 676.)
Moreover, it cannot be said that the policy with respect to the issuance of identification numbers was unreasonable. Ms. Ferguson testified that misplaced licenses were sometimes found by their true owners and used without the DMV being notified. If a new number had been issued, it would have resulted in the drivers having multiple identification numbers.
Finally, claimant argues that the police should have arrested whoever was using his lost and suspended license. Aside from the fact that defendant is not responsible for the alleged omissions of the local police in this regard, in the absence of an assumed duty to claimant, not even alleged here, the failure to enforce the Vehicle and Traffic Law creates no cause of action in claimant’s favor. (Cuffy v City of New York, 69 NY2d 255.)
It is unfortunate but true that not every wrong can find redress in the law. (O’Neill v State of New York, NYLJ, Mar. 16, 1989, at 25, col 2.) This is one such case.
For the foregoing reasons, the claim is dismissed.

. On September 16, 1986, claimant was issued a new motorist identification number which apparently resolved the problem with respect to any future tickets.

. No evidence was offered as to who issued claimant the tickets. Inasmuch as they were incurred in New York City, presumably they were issued by local police or traffic agents for whom the State is not responsible. (Williams v State of New York, 90 AD2d 861.) The prosecutions were continued by State employees, however, which can support an independent action for malicious prosecution. (Callan v State of New York, 73 NY2d 731.)

. Under the circumstances, we do not reach the question of whether the position of field investigator is more analogous to a prosecutor, protected by absolute immunity (see, Ryan v State of New York, 56 NY2d 561; Cunningham v State of New York, 71 AD2d 181) or to a police investigator, who is only entitled to a qualified protection (see, Arteaga v State of New York, 72 NY2d 212).

. Public policy prohibits this subsequent change from being considered evidence of negligence. (See generally, Fisch, New York Evidence § 798.)