OPINION OF THE COURT
Gerard M. Weisberg, J.
This is a claim for, among other things, wrongful confinement, loss of work-release wages and mental anguish arising out of two incidents at Edgecombe Correctional Facility: claimant’s confinement to a special housing unit (SHU) and a fire which occurred at the facility while claimant was so confined.
Claimant, then a State prison inmate, was transferred to Edgecombe on March 5, 1991 as a participant in its temporary release program. By June 12, 1991, he had obtained a job and was regularly leaving the facility to work. Edgecombe also had a furlough program under which eligible inmates could leave the facility for specified periods of time even when not going to work. Pursuant to defendant’s regulations with which claimant conceded he was familiar, if an inmate was more than 10 hours late returning from a furlough, he was presumed to have absconded. (See, 7 NYCRR 1901.2 [b] [3] [iv] [a] [5].)
Claimant stated that he was out on a furlough prior to June 28, 1991. It is conceded that he was due back on that day. He testified that he returned to Edgecombe that night but was told by an unnamed correction officer that there was no bed for him. In claimant’s words, the correction officer "turned him around,” i.e., sent him back out on another furlough. *22 There is, however, no written record that claimant had returned to Edgecombe on June 28, 1991. As a result, he was declared to have absconded and an arrest warrant was issued the same day.
Claimant voluntarily returned to Edgecombe on July 9, 1991 and he was immediately put into the "box”, i.e., the locked wing of the facility from which he was not allowed to leave. As of July 31, 1991, claimant continued to be held in this SHU although neither a misbehavior report nor a superintendent’s hearing had been issued or held. (Cf, 7 NYCRR 251-5.1; 1901.2 [b] [3] [iv] [a] [6] [hearing must be commenced within seven days of initial confinement].) When this was brought to the attention of Lieutenant Morton, a security officer, claimant was released. However, the same day, this decision was reversed by Lieutenant Lathen, the acting deputy superintendent of security, and claimant was returned to the locked wing.
On August 2, 1991, claimant was notified that he would have a hearing before the Temporary Release Committee on August 7, 1991 concerning his "recent disciplinary problems.” He appeared before the Committee on that date which removed him from the temporary release program because he had absconded. Presumably the Committee did not credit claimant’s account of his being turned around by an unnamed correction officer. On August 18, 1991 claimant was released from the locked wing and on August 21, 1991 he was transferred to Fishkill Correctional Facility.
In Arteaga v State of New York (72 NY2d 212), the Court of Appeals held that correction officers and prison officials are absolutely immune with respect to their decisions concerning the confinement of inmates, the issuance of misbehavior reports and their adjudication. On the other hand, the State is liable for unlawful actions of prison employees taken beyond their authority or in violation of the governing rules. (Supra, at 220.)
Claimant argues that he was unlawfully confined for 41 days (July 9, 1991 to Aug. 18, 1991?), and as a result among other damages lost work-release wages for one year totalling $9,840. Why lost wages for one year are claimed is not explained.
Section 1901.2 (b) (3) (iv) (a) (6) provides that where a participant in a temporary release program returns more than 10 hours late, the facility shall conduct a superinten *23 dent’s hearing at which the inmate may rebut the presumption that his failure to return was intentional. Section 251-5.1 provides that when an inmate is confined pending a disciplinary or superintendent’s hearing, it must be commenced within seven days of the confinement unless the delay is authorized by the Commissioner or his designee. Here claimant was confined on July 9, 1991 and more than seven days passed without his having a hearing. There was no evidence that the Commissioner or his designee authorized the delay. I therefore find that these regulations were violated. Be that as it may, section 1904.2 (c) provides: "In those cases of serious violations of departmental, institutional or temporary release program rules and regulations such as, but not limited to, new convictions for crimes committed while in program, absconding from program, returning to the facility from a program of temporary release more than 10 hours late (which the Correction Law requires that the department consider as a rebuttable presumption of an intent to abscond) * * * these violations should first be resolved by a superintendent’s hearing before the temporary release participant’s suitability for further temporary release programming may be considered by a temporary release committee. Less serious violations of departmental, institutional or temporary release rules and regulations must first be resolved by the disciplinary process before the temporary release participant’s suitability for further temporary release programming may be considered by a temporary release committee.” (Emphasis supplied.) The disparate choice of the words "should” and "must” imply that where, as here, the serious violation of absconding is involved, the facility has the discretion to hold a Temporary Release Committee hearing first, or in lieu of a superintendent’s hearing. That is what happened here although as indicated above, not on a timely basis. Be that as it may, claimant had a hearing before the Temporary Release Committee, after which he was found to have absconded and he was removed from the temporary release program. Inasmuch as the only housing accommodations at Edgecombe for nontemporary release inmates was the locked wing, his confinement there was continued.
Claimant challenges this hearing on two grounds: that the notice of the Temporary Release Committee was defective in that it did not specify the reason for the hearing; and that the Committee could not remove him for absconding without the finding having been previously sustained at a superintendent’s hearing.
*24 As to the first argument, claimant is correct. The notice that he received provided only that the hearing would concern his "recent disciplinary problems.” However, claimant knew he was in the SHU for absconding and had requested a hearing to challenge it. He therefore cannot allege surprise and in fact has not. The Committee did no more than take up the very issue with respect to which claimant had requested a hearing. He has therefore not been prejudiced by this error.
Concerning his second contention, section 1904.2 (h) provides in part: "It is noted that the temporary release committee may not use a disciplinary infraction or misbehavior report as a reason for recommending that an inmate be removed from a program of temporary release when this disciplinary violation has not been sustained by a disciplinary hearing or superintendent’s hearing.” Claimant argues from this that he was removed for absconding although that finding had not, and has never been, sustained at a superintendent’s hearing.
 I believe this section only applies where a superintendent’s hearing is held prior to a Temporary Release Committee hearing. In such case, the Temporary Release Committee could not rely on a violation unsustained at the prior superintendent’s hearing. Where, however, as here, the Temporary Release Committee hearing is held prior to, or in lieu of, a superintendent’s hearing, this section has no application. Moreover, should this analysis prove incorrect, it seems to me that claimant will have shown no more than that defendant’s employees committed an error of law while engaged in a quasi-judicial function for which the State is immune. (See, Arteaga v State of New York, 72 NY2d 212, supra.)
To summarize, I find that claimant was confined in an SHU without a timely hearing as required by the defendant’s regulations. However, he was then given a hearing at which a finding of absconding was sustained and upon which he was removed from the temporary release program. Inasmuch as there was no evidence that the same result would not have been obtained had the hearing been held in a timely manner, and inasmuch as the only housing for inmates not in the temporary release program was the locked wing, claimant was not damaged by the delay.
As to the fire, it apparently occurred on July 11, 1991 at a building not owned by the State, located next door to Edgecombe. As a result, some smoke blew in through the *25 windows. Claimant seeks damages for the fear he allegedly experienced when this happened inasmuch as he was in a locked and confined place. Claimant asserts that having locked the fire doors, defendant violated its own fire and safety codes.
As indicated above, claimant was appropriately being confined in a locked wing. A locked wing with a fire door which could be opened by inmates at will would be a contradiction in terms. In any event, the fire was only in an adjacent building, and claimant was never in any objective danger; nor did he suffer any objective damages. In fact, there was evidence that most inmates slept through the event unaware of it.
For the foregoing reasons, the claim is dismissed.