■ In the Matter of QABAIL HIZBULLAHANKHAMON, Also Known as KIRK JOHNSON, Petitioner, v THOMAS A. COUGHLIN,

III, as Commissioner of the New York State Department of Correctional Services, et al., Respondents. [628 NYS2d 909] —Determination annulled on the law without costs and petition granted. Memorandum: The determination finding petitioner guilty of violating inmate rule 117.10 (7 NYCRR 270.2 [B] [18] [i]) must be annulled. That rule prohibits inmates from possessing "explosive devices or materials that can be used to make explosive devices". Notes, drawings and diagrams regarding the instruction and assembly of pipe bombs, hot pot bombs, and booby traps were found in petitioner's cell. Those documents do not constitute "explosive devices" or materials that can be used to make them within the meaning of rule 117.10; if documents are intended to come within its ambit, the rule should be amended accordingly.

All concur except Wesley and Balio, JJ., who dissent and vote to confirm in the following Memorandum:

Wesley and Balio, JJ. (dissenting). Inmate rule 117.10 prohibits inmates from possessing "explosive devices or materials that can be used to make explosive devices" (7 NYCRR 270.2 [B] [18] [i]). We reject petitioner's contention that the word "materials" means only those devices and ingredients actually incorporated into the explosive device. Thus, we respectfully dissent.

Respondents contend that, in the context of the prison environment, the word "materials" must be read in its broadest sense to encompass written material and diagrams that are instructive in nature and that promote violence. The Commissioner of the Department of Correctional Services (respondent) has broad discretion in the implementation of policies relating to security and inmate discipline *(see, Arteaga v State of New York,* 72 NY2d 212, 217-218; *Matter of Allah v Coughlin,* 190 AD2d 233, 236, *lv denied* 82 NY2d 659). Thus, the "court should defer to the Commissioner's interpretation of his authority" and the construction adopted by respondent should be sustained if not irrational *(Matter of Allah v Coughlin, supra,* at 236; *see also, Matter of Blake v Mann,* 145 AD2d 699, 701, *affd* 75 NY2d 742) and if "reasonably related to legitimate penological interests" *(Matter of Allah v Coughlin, supra,* at 236). We perceive nothing irrational or unreasonable in respondent's interpretation of the word "materials".

The word "materials" is a general term. When used as a noun, it is commonly defined to include physical objects of all sorts, i.e., all types of matter. Thus, "materials" would commonly include not only implements, devices and ingredients, but also, notes, diagrams and illustrations *(see, e.g.,* Webster's

Third New International Dictionary 1392 [1981] [defining material as "something (as data, observations, perceptions, ideas) that may through intellectual operation be synthesized or further elaborated or otherwise reworked into a more finished form or a new form"]). Inmate rule 117.10 includes no adjective limiting the meaning of the word "materials" *(see, e.g.,* 7 NYCRR 270.2 [B] [19] [iii] ["flammable materials"]). Had respondent intended to limit the meaning of "materials", it could easily have done so. For example, in promulgating inmate rule 118.20 regarding the making of tattoos, respondent specifically provided that "[i]nmates shall not be in possession of *instruments or devices* used for the purpose of making tattoos" (7 NYCRR 270.2 [B] [19] [ii] [emphasis added]). The inmate rules are replete with references to specific physical objects (e.g., containers, silverware, hats, caps, etc.) that are prohibited or restricted in various contexts. Instead, respondent placed no limitation upon the word "materials", thus signifying that it should be construed in the broadest sense. Further, interpreting the word "materials" in its broadest sense to include written materials is consistent with respondent's use of that word in other inmate rules *(see, e.g.,* 7 NYCRR 270.2 [B] [6] [iii] ["Inmates shall not * * * display, wear, possess, distribute or use unauthorized organizational insignia or materials"]; 7 NYCRR 270.2 [B] [14] [xii] ["Inmates shall not possess literature and related materials which has been disapproved"]).

Common sense and experience also support respondent's interpretation. No one, except perhaps the expert and most experienced, would attempt the making of a lawnmower without the accompanying notes, diagrams and illustrations for assembly and operation. The same is true of any physical object that must be constructed of various parts or ingredients, and particularly dangerous products like explosive devices. The use of a formula and written directions and illustrations by the would-be bomber is just as essential to the making of an explosive device as the tools, component parts and ingredients. In our view, the restrictive interpretation employed by the majority ignores that common experience and is inconsistent with respondent's use of the word "materials" throughout the inmate rules.

At his Tier III disciplinary hearing, petitioner admitted that he possessed the notes, drawings and diagrams that were seized during a routine frisk of his cell. Those notes, drawings and diagrams provide instruction on the production and assembly of pipe bombs, hot pot bombs and booby traps. Petitioner does not contend that those notes, drawings and diagrams could not

be used in the making of an explosive device. Respondent, with a mind toward security and inmate discipline, could reasonably and rationally conclude that penological objectives would be served by prohibiting the possession of formulas, illustrations and directions needed to make an explosive device, as well as the possession of devices and ingredients. Respondent used the word "materials" to effect a broad prohibition of all types of materials. The majority sets forth no basis for substituting its own restrictive interpretation that, in our view, is inconsistent with the fundamental objective of prison safety and security. Because respondent's interpretation of the inmate rule is neither unreasonable nor irrational, we would sustain respondent's interpretation.

We also reject the contention that petitioner was denied a timely hearing. A Tier III hearing must be commenced within seven days of an inmate's confinement on the misbehavior charge (7 NYCRR 251-5.1 [a]), and, if an inmate requests an assistant, the hearing "may not start until 24 hours after the assistant meets with the inmate" (7 NYCRR 254.6 [a]). Petitioner initially requested an assistant, but the record reveals that, when the assistant met with him, petitioner refused assistance. The hearing commenced on the sixth day following petitioner's confinement on the charge. Petitioner informed the Hearing Officer that he had requested assistance, but that the assistant never came to his cell, and thus, that he never refused assistance. After reading the misbehavior report into the record and the entry of petitioner's plea of not guilty, the Hearing Officer adjourned the hearing for the assignment of an employee assistant and directed that the hearing be reconvened 24 hours after petitioner met with the assistant. Petitioner met with an assistant and the hearing reconvened on the 11th day of confinement. Even accepting the version of petitioner that he did not see an assistant before the hearing commenced, any deficiency in employee assistance was properly cured at the hearing stage, petitioner suffered no prejudice (see, Matter of Mabry v Coughlin, 191 AD2d 892, 893; Matter of Brown v Coughlin, 165 AD2d 935, 936), and he was not denied the right to a timely hearing. Thus, we would confirm the determination and dismiss the petition. (CPLR art 78 Proceeding Transferred by Order of Supreme Court, Wyoming County, Dadd, J.) Present—Denman, P. J., Pine, Wesley, Balio and Davis, JJ.