ESTATE OF Yankel ROSENBAUM, by Samuel PLOTKIN, Public Administrator of the County of Kings, The Crown Heights Jewish Community Council, Carol Adelstein, Steven Adelstein, Yossi Alon, Yosef Altein, Isaac Bitton, Yechiel Bitton, Joseph Chenzin, Bruce Emmer, Sudarshan Jagga, Sarah Keller, Noson Kopel, Howard Kupchin, Harvey Lang, Ida Lefkowitz, Rose Marie Libassi, Chana Lipkind, Nechama Lipkind, David Michel, Menachem Piekarski, Jacob Pinson, Arie Prager, Allen Schwartz, Menachem Shagalow, Mordechai Shusterman, Michael Simon, William Welis, Zehava Welis, Yeshiva Chanoch Lenaar, Congregation B'Nai Solomon Zalman of Crown Heights, Inc., on behalf of themselves and others similarly situated, Plaintiffs,

v.

The CITY OF NEW YORK, David N. Dinkins, Individually and as Mayor of the City of New York, and Lee Brown, Defendants.

No. 92–CV–5414 (FB).

United States District Court, E.D. New York.

Nov. 18, 1997.

Snitow & Pauley Franklyn H. Snitow, of counsel, New York City, for Plaintiffs (except Plaintiffs Isaac and Yechiel Bitton).

Stillman & Friedman, P.C. John B. Harris; of counsel, New York City, for Defendants Dinkins and Brown.

### MEMORANDUM AND ORDER

BLOCK, District Judge.

On August 22, 1997, the Court issued a Memorandum and Order ("August 22 Decision") that, *inter alia,* dismissed plaintiffs' claims under 42 U.S.C. § 1983 against defendants David N. Dinkins ("Dinkins") and Lee Brown ("Brown") on the grounds of qualified immunity. *Estate of Rosenbaum, et al. v. City of New York,* 975 F.Supp. 206 (E.D.N.Y. 1997). Although Dinkins and Brown also sought dismissal of plaintiffs' pendent state law claims, the Court noted that counsel had not addressed the issue of state law immunity in their submissions. The Court invited submissions on this discrete legal issue. As the issue is now fully briefed, the Court turns to a consideration of whether New York law requires dismissal of the pendent state law claims against Dinkins and Brown.

In the August 22 decision, the Court set out at length the tragic facts giving rise to this case, and these facts will not be repeated herein. Briefly, however, the plaintiffs to this action largely consist of Hasidic Jewish residents of the Crown Heights section of Brooklyn. The gravamen of their complaint is that during the civil unrest that occurred in Crown Heights in August 1991, defendants Dinkins and Brown initially implemented a law enforcement strategy that "selectively den[ied] police protective and investigative services to Jews and other non-Black persons." Amended Complaint at ¶ 144. In addition to claims under 42 U.S.C. §§ 1983, 1985 and 1986, the complaint, as amended, contains eight state causes of action: (1) a negligence claim for personal injuries allegedly sustained by plaintiffs; (2) a claim for property damage allegedly sustained by plaintiffs; (3) a claim for wrongful death on behalf of the Estate of Yankel Rosenbaum ("Estate"); (4) a survival claim on behalf of the Estate; (5) a loss of services claim by Yechiel Bitton for injuries allegedly sustained by his father Isaac Bitton during a physical assault; (6) a claim for infliction of emotional distress by Yechiel Bitton for psychological injuries sustained after viewing Isaac Bitton's assault; (7) a claim by Isaac Bitton for loss of services based upon Yechiel Bitton's psychological injuries; and (8) a claim on behalf of all plaintiffs based upon an alleged violation of New York Civil Rights Law § 40–c (McKinney 1992).

Turning first to the three claims asserted on behalf of plaintiffs Isaac and Yechiel Bitton ("the Bitton plaintiffs"), the Court notes that these parties, who alone are represented by Chana Sklar Israel, Esq., have not opposed Dinkins and Brown's summary judgment motion. Indeed, in a letter to the Court dated June 9, 1997, Ms. Israel indicated that the Bitton plaintiffs were willing to discontinue their claims against Dinkins and Brown individually. In the absence of any opposition, therefore, the three state claims asserted on behalf of the Bitton plaintiffs are dismissed as against Dinkins and Brown in their individual capacities.

As a threshold matter, the Court also dismisses plaintiffs' cause of action under Civil Rights Law § 40–c. As counsel for Dinkins and Brown has noted, a plaintiff must notify the Attorney General of the State of New York at or before commencing an action under this section. N.Y. Civ. Rights Law § 40–d. Failure to comply with this notice requirement mandates dismissal of the claim. *See Harvey v. NYRAC, Inc.,* 813 F.Supp. 206, 212 (E.D.N.Y.1993). Plaintiffs have offered absolutely no proof controverting Dinkins and Brown's contention that no such notice was given. Accordingly, this claim is dismissed.

Turning to plaintiffs' remaining state law claims, the Court observes that New York immunity law "affords public officials considerably greater protection from individual capacity suits than the federal doctrine of qualified immunity." *Hirschfeld v. Spanakos,* 909 F.Supp. 174, 180 (S.D.N.Y.1995). In the August 22 decision, the Court, based upon its independent review of controlling New York precedent, indicated its initial impression that principles of New York state immunity might well bar the assertion of these state law claims against Dinkins and Brown individually. *Estate of Rosenbaum,* 975 F.Supp. at 225. Having reviewed the parties' submissions on New York immunity law, the Court concludes that its first impression was correct and that plaintiffs' state law claims are indeed barred.

The New York Court of Appeals has articulated the State's official immunity standard as follows:

> Whether an action of a governmental employee or official is cloaked with any governmental immunity requires an analysis of the functions and duties of the actor's particular position and whether they inherently entail the exercise of some discretion and judgment. If these functions are essentially clerical or routine, no immunity will attach.... If a functional analysis of the actor's position shows that it is sufficiently discretionary in nature to warrant immunity, it must then be determined whether the conduct giving rise to the claim is related to an exercise of that discretion. Obviously, governmental immunity does not attach to every action of an official having discretionary duties but

only to those involving an exercise of that discretion.

*Mon v. City of New York*, 78 N.Y.2d 309, 313 579 N.E.2d 689, 692, 574 N.Y.S.2d 529, 532 (1991); *see also Haddock v. City of New York*, 75 N.Y.2d 478, 484, 553 N.E.2d 987, 991, 554 N.Y.S.2d 439, 443 (1990) ("when official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial, a municipal defendant generally is not answerable in damages for the injurious consequences of that action.").

In opposition to Dinkins and Brown's motion, plaintiffs contend that Dinkins and Brown's law enforcement functions under the New York City Charter are ministerial and not discretionary and that a finding of official immunity is therefore not appropriate. Plaintiffs cite to provisions in the City Charter that provide, *inter alia*, that the New York City Police Department is required to preserve the peace, prevent crime, suppress riots, disperse unlawful assemblages and protect individual safety and property. They contend that Dinkins and Brown's alleged failure to protect the Hasidic Jewish community in Crown Heights constituted a departure from a mandatory statute that provides for a compulsory result, and that this departure is a ministerial lapse that does not permit the assertion of official immunity.

■ Plaintiffs' argument is patently without merit. "[T]he rule to be derived from the cases is that discretionary or quasi-judicial acts involve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result." *Tango v. Tulevech*, 61 N.Y.2d 34, 41, 459 N.E.2d 182, 186, 471 N.Y.S.2d 73, 77 (1983). The substance of plaintiffs' allegations against Dinkins and Brown is that they implemented an ineffective police strategy— a strategy of "demonstration control" as opposed to a strategy of "riot control"—during the first several days of the Crown Heights disturbances. As set forth in greater detail in the August 22 decision, however, the decision of which police strategy to implement under crisis conditions is quintessentially a matter of discretion. *Estate of Rosenbaum*, 975 F.Supp. at 221–223. Although, as set forth in the City Charter, the Police Department is charged with the ultimate goals of, *inter alia*, maintaining the public peace and preventing the commission of crime, the Charter does not additionally contain an absolute rule or standard that sets forth precisely how these general goals must be attained. Rather, the actions of Dinkins and Brown in determining how to respond to a sudden outbreak of racially-motivated violence "entail[ed] discretionary decisions in furtherance of general policies and purposes where the exercise of reasoned judgment can produce different acceptable results." *Arteaga v. State of New York*, 72 N.Y.2d 212, 219, 527 N.E.2d 1194, 1198, 532 N.Y.S.2d 57, 61 (1988). Consequently, the Court concludes that Dinkins and Brown are immune from individual liability under plaintiffs' state common law claims. This conclusion is consistent with New York authority which holds that, when confronted with stressful emergency conditions, governmental officials should not be inhibited in the exercise of their professional judgment by the specter of civil litigation. *See Haddock*, 75 N.Y.2d at 484, 553 N.E.2d at 991, 554 N.Y.S.2d at 443; *Arteaga*, 72 N.Y.2d at 219, 527 N.E.2d at 1198, 532 N.Y.S.2d at 61.

In conclusion, Dinkins and Brown's motion for summary judgment seeking dismissal of the state law claims is granted in its entirety, and the state law claims are dismissed against these defendants in their individual capacities. Further, plaintiffs' claim under § 40–c of the New York Civil Rights Law is dismissed in its entirety based upon plaintiffs' undisputed failure to notify the Attorney General at or before commencement of this action that they had filed a claim under this section.

**SO ORDERED.**