OPINION OF THE COURT
Philip J. Patti, J.
Defendant moved to dismiss this action for alleged defamation on the grounds that the claim was untimely and that an absolute privilege for quasi-judicial communications shields it from liability for the statements at issue. Claimant responded that her claim was timely because a coclaimant served a notice of intention within 90 days after the claim accrued. She also argued that no privilege attached to the communications because they were made in a proceeding to which she was not a party. In a cross motion, she sought an order compelling defendant to respond to certain discovery and to sanction defendant for noncompliance pursuant to CPLR 3126.
For the reasons stated below, I conclude that defendant waived its objection to the timeliness of the claim, and that absolute immunity shields defendant from liability. Defendant’s motion is granted. Claimant’s motion is denied on the grounds that it is moot.
This is (or at least appears to be) a story of love under extremely trying circumstances. Marjorie Vogel, claimant, is an Assistant Probation Officer employed by the Wyoming County Probation Department. James Blackwell, who describes himself as Vogel’s fiancé, is an inmate in the custody of the New York State Department of Correctional Services. He resided, at all times relevant to this proceeding, in the Wyoming Correctional Facility. The two filed this claim together on February 22, 2000; however, it is only the claim of Ms. Vogel that is before me now.*
The causes of action set forth in the claim can all be traced to a decision by the Department of Correctional Services (Department) in May 1999 to confine Mr. Blackwell to administrative segregation. The Department apparently decided to take this action becausé it was concerned that the relationship *188 between Vogel and Blackwell was compromising security at Wyoming.
The first count of the claim is the only one that pertains to Vogel. In it she alleges that defendant defamed her in two written documents that related to the administrative segregation recommendation: a May 9, 1999 Administrative Segregation Recommendation (Recommendation) issued by Lieutenant C. Richards, and a May 13, 1999 Administrative Segregation Hearing Determination (Determination) signed by Captain K. Gilbert, a Hearing Officer. Claimant asserts that these statements defamed her because they would lead the average reader to believe that she violated the confidentiality requirements of her job.
Defendant’s challenge to the timeliness of the claim turns in part on two issues: (1) the date that the defamation claim accrued, and (2) the sufficiency of the two notices of intention that claimant and Mr. Blackwell served before they filed their claims.
A claim for defamation accrues on the date of first publication (Gelbard v Bodary, 270 AD2d 866). Words are “published” within the meaning of the law of libel when they are in writing and are read by someone other than the person who was allegedly defamed (Fedrizzi v Washingtonville Cent. School Dist., 204 AD2d 267). Publication of a defamatory statement can occur when the statement is read or heard by anyone, even a member of a claimant’s family (60 Minute Man v Kossman, 161 AD2d 574, 576, citing Kolko v City of Rochester, 93 AD2d 977; Prosser and Keeton, Torts § 113, at 798 [5th ed]). But, it is not enough to show that defendant disseminated the defamatory communication; it must also be shown that a third party read it or heard it (see, Rossignol v Silvernail, 146 AD2d 907, 908; see also, McGill v Parker, 179 AD2d 98, 106; Prosser and Keeton, Torts § 113, at 798 [5th ed]).
The attachments to defendant’s moving papers make clear that defendant served the Recommendation upon Mr. Blackwell on May 9, 1999, and that defendant’s Hearing Officer read the Recommendation, including the alleged defamatory statement it contained, to Blackwell during the May 13, 1999 hearing. The Hearing Officer also read the Determination to claimant at the conclusion of the May 13 hearing. Therefore, claimant’s cause of action accrued no later than May 13, 1999. To extend the time for filing this claim to one year from accrual, claimant had 90 days from May 13, or until August 11, 1999, to serve a notice of intention on the Attorney General *189 personally or by certified mail, return receipt requested (Court of Claims Act § 10 [3-b]; § 11 [a]).
The Attorney General admits that it received two notices of intention, but claims that neither one was legally sufficient to extend the time for claimant to serve her claim. One of those notices plainly did not satisfy the Court of Claims Act. It arrived at the Attorney General’s office on August 13, 1999, two days after the deadline, and it was sent by express mail, an improper means of effecting service (see, Negron v State of New York, 257 AD2d 652; Hodge v State of New York, 213 AD2d 766). Defendant preserved its objections to this notice of intention with particularity in its answer to the claim (see, Court of Claims Act § 11 [c]).
The other notice of intention was properly served. It arrived at the office of the Attorney General by certified mail, return receipt requested, on August 9, 1999, two days before the deadline. Although it bore the names of Vogel and Blackwell and alleged that the Recommendation defamed claimant, defendant argues that claimant cannot rely upon it because Blackwell was the only one who signed and verified it.
Court of Claims Act § 11 (b) requires “[t]he claim and notice of intention to file a claim shall be verified in the same manner as a complaint in an action in the supreme court.” CPLR 3020 (d), which governs the verification of complaints and other pleadings in Supreme Court, requires that “[t]he verification of a pleading shall be made by the affidavit of the party, or, if two or more parties united in interest are pleading together, by at least one of them who is acquainted with the facts” (see, Hood v State of New York, 113 Misc 404, 407-408 [notice of intention verified by one of two parties united in interest satisfied the jurisdictional requirements of the Court of Claims]).
Recently, Judge Corbett of this court held in a case of apparent first impression that the verification requirement was jurisdictional and that an unverified claim had to be dismissed (see, Martin v State of New York, 185 Misc 2d 799).
A critical distinction between Martin (supra) and this case is the manner in which the failure to verify is claimed to have affected the proceedings. In Martin, the defendant advised the claimant in an affirmative defense that it was treating the claim as a nullity because it was not verified. The issue came before Judge Corbett on the eve of trial when the claimant sought to overcome the affirmative defense by moving to amend the claim nunc pro tunc, and the defendant cross-moved to dismiss the claim because it was jurisdictionally defective (see, *190 Martin v State of New York, 185 Misc 2d, at 804-805, supra). Judge Corbett intimated that since the failure to verify impacted the court’s jurisdiction, it did not have to be pleaded with particularity in the answer and could be raised at any time.
[11 I believe that a different result must be reached where, as here, the failure to verify a notice of intention is said to render the claim untimely. This conclusion is compelled by Court of Claims Act § 11 (c) which requires that:
“Any objection or defense based upon a failure to comply with (i) the time limitations contained in section ten of this act * * * is waived unless raised, with particularity, either by a motion to dismiss made before service of the responsive pleading is required or in the responsive pleading, and if so waived the court shall not dismiss the claim for such failure” (emphasis supplied).
Since there is no affirmative defense in defendant’s answer specifically directed to the sufficiency of the August 9, 1999 notice of intention, I conclude that defendant has waived that defense (see, Sinacore v State of New York, 176 Misc 2d 1; Fowles v State of New York, 152 Misc 2d 837).
This brings me to defendant’s second argument in support of dismissal. Relying upon Arteaga v State of New York (72 NY2d 212) and principles of the law of defamation, defendant argues that the claim must be dismissed because it was privileged to make the challenged statements.
In Arteaga, the Court of Appeals held that defendant is absolutely immune for the actions of employees of the Department of Correctional Services in preparing and filing misbehavior reports, confining inmates and making dispositions following Superintendent’s hearings (72 NY2d 212, supra). Although Arteaga arose in the context of inmate disciplinary proceedings, the Court’s reasoning left little doubt that the same result should attach to administrative segregation proceedings. The Court concluded that charging inmates with misbehavior, conducting inmate disciplinary proceedings and making decisions about pre- and posthearing confinement were quasi-judicial in nature and deserving of absolute immunity because those activities “entail discretionary decisions in furtherance of general policies and purposes where the exercise of reasoned judgment can produce different acceptable results” (Arteaga v State of New York, 72 NY2d 212, 219, supra). Addressing the issue of prehearing confinement specifically, the Court said *191 that “[i]n determining whether there are reasonable grounds to believe that an inmate represents an immediate threat to the safety, security or order of the facility (7 NYCRR 251-1.6) and that they should, therefore, confine the inmate * * * correction officers fulfill a role that is in a sense judicial.” (Supra, at 219-220.)
Based upon Arteaga (supra), I conclude that administrative segregation proceedings are quasi-judicial. The standard for confining an inmate to administrative segregation is virtually the same as the standard used to confine inmates to their cells pending a disciplinary hearing. Officers must decide whether the inmate should be administratively segregated because his “presence in general population would pose a threat to the safety and security of the facility” (7 NYCRR 301.4 [b]; compare, 7 NYCRR 251-1.6). The procedure used to adjudicate this issue is a Superintendent’s Hearing — the same procedure used to adjudicate the misbehavior reports at issue in Arteaga (72 NY2d 212, 215, supra; 7 NYCRR 301.4, 254.1 et seq.). In deciding whether to confine an inmate to administrative segregation for the safety and security of the facility, correction officers and Hearing Officers employ the same type of discretionary judgment that they use when deciding how to respond to alleged misbehavior (Arteaga v State of New York, supra, at 215).
The law of defamation, as it has developed in this State, also leads me to conclude that an absolute privilege or absolute immunity bars this claim. In New York, statements made by Hearing Officers, parties, attorneys and witnesses in the course of a quasi-judicial proceeding are absolutely privileged, notwithstanding the motive with which they are made, so long as they are material and pertinent to the issues to be resolved in the proceeding (see, Herzfeld & Stern v Beck, 175 AD2d 689, 691, lv dismissed 79 NY2d 914, 82 NY2d 789, 89 NY2d 1064; Wiener v Weintraub, 22 NY2d 330, 331-332; Allan & Allan Arts v Rosenblum, 201 AD2d 136, 139, lv denied 85 NY2d 921, cert denied 516 US 914).
A proceeding is quasi-judicial and subject to the privilege when, as in the case of the hearing at issue, it is adversarial, results in a determination that derives from the application of appropriate provisions of the law to facts, and is susceptible to judicial review (Herzfeld & Stern v Beck, supra).
The scope of the privilege extends to the Recommendation and the Determination. The Recommendation is essentially a complaint or a statement of charges. This type of document has long been protected by absolute privilege, regardless of the *192 motives of the person who prepared the document (see, Sullivan v Board of Educ., 131 AD2d 836, 839 [statement of charges in Education Law disciplinary hearing]; Wiener v Weintraub, 22 NY2d 330, supra [complaint letter to attorney grievance committee]; Herzfeld & Stern v Beck, 175 AD2d 689, 691-692, supra [broker termination notice filed with stock exchange]; Stilsing Elec. v Joyce, 113 AD2d 353 [complaint filed by union investigator with State Commissioner of Labor]). The Determination is akin to a decision or order, which is another type of document protected by the privilege (Restatement [Second] of Torts § 585, comment d; Prosser and Keeton, Torts § 114, at 816 [5th ed]).
Contrary to claimant’s assertion, it does not matter that claimant was not a party to the administrative segregation determination. To hold otherwise would defeat the efficacy of the immunity. In Arteaga (supra), the Court of Appeals found that exposing defendant to tort liability for the actions of its correction officers and Hearing Officers would seriously undermine the officers’ performance of their duties.
“Because of the unquestioned risks to inmates, employees, and the public from a breakdown in order and discipline in correctional facilities and the potentially tragic consequences of such occurrences (see, Jones v State of New York, 33 NY2d 275, 280), it is particularly important that correction officers not be dissuaded by the possibility of litigation from making the difficult decisions which their duties demand. Nor should correction personnel acting as reviewing officers feel reluctant to reverse hearing determinations because doing so might expose the State to liability. These policy considerations dictate the need for quasi-judicial immunity for correction officers who must maintain control and security in the closed setting of a correctional facility where inmates are involuntarily confined by decree of the State.” (Arteaga v State of New York, 72 NY2d, supra, at 220.)
Such concerns apply with equal force whether the potential litigant is the subject of the proceeding or a third party. I therefore conclude that the alleged defamatory communications are not actionable. The claim must be dismissed.
Because I am dismissing the claim, I do not reach the issue of whether defendant should be compelled to produce certain *193 documents or sanctioned for not producing them (see, Lane v Fisher Park Lane Co., 276 AD2d 136 [2000]). Claimant’s cross motion is denied as moot.

 The Honorable Susan Phillips Read, Presiding Judge of the Court of Claims, determined that the claims of Ms. Vogel and Mr. Blackwell should be treated as separate and distinct claims and assigned them different claim numbers. Under the court’s venue rules, Mr. Blackwell’s claim (101994) will be adjudicated by the Judge assigned to hear claims arising at Wyoming Correctional Facility.