OPINION OF THE COURT
Mary H. Smith, J.
This is a CPLR article 78 proceeding which was commenced by way of an order to show cause. In deciding this matter, the court has read petitioner’s pro se verified petition with its supporting affidavits and exhibits, respondents’ verified answer with its supporting affidavit and exhibits, and petitioner’s veri *523 fied reply. Upon consideration of these submissions, the matter is decided as follows:
Petitioner is an inmate who suffers from hepatitis C and is currently housed at Sing Sing Correctional Facility. He seeks, by way of this article 78 proceeding, the following relief based on his allegations that respondents are subjecting him to cruel and unusual punishment: (1) an order vacating the decision by respondents, Dr. Lester Wright and Dr. Perilli, to deny petitioner treatment for his chronic and potentially fatal condition until he participates in respondents’ alcohol and substance abuse treatment (ASAT) program; (2) an order directing respondents to start the treatment that had been prescribed by respondents; and (3) granting such other relief as the court may deem just and proper.
Background
As set forth in respondents’ verified answer and supporting exhibits as well as the exhibits attached to the petition and public records, the essential facts underlying this proceeding are not in dispute. Petitioner is 52 years old and has served approximately 4 years of his maximum sentence of 16 years in Sing Sing Correctional Facility pursuant to his conviction of attempted murder in the second degree. Petitioner has been incarcerated since 1999 and states that when he was originally “being processed into the prison system in Downstate in 1999, [h]e did admit to using alcohol and sniffing heroin when [he] was very young.” (Verified reply 11, at 5.) There is no allegation by respondents that petitioner is currently abusing drugs or alcohol; indeed, respondents do not specifically refute (other than asserting a general denial to all the allegations found in the verified petition) that petitioner has been drug free for over 30 years. Moreover, there is an admission in respondents’ records that with regard to petitioner, there has not been any “[a]ctive alcohol or other substance abuse within the past two years.” (See verified petition, exhibit F [emphasis added].)
On February 21, 2002, petitioner was diagnosed by Dr. Antonell of St. Agnes Hospital of White Plains, New York, with chronic hepatitis C/r, grade-2, stage-2 and focal septal fibrosis. (Verified petition, exhibit A.) This diagnosis was based on a liver biopsy of petitioner that had been ordered by respondents on October 30, 2000. (Verified petition, exhibit D.) Respondents do not dispute that they have screened petitioner for his participation in their hepatitis C treatment program, and that he fits within the profile for treatment but for his failure to *524 participate in ASAT. (See verified petition, exhibit F.) It appears that sometime after his diagnosis, respondents advised petitioner of the requirement that he participate in ASAT[1] in order to receive medical treatment because petitioner was enrolled in it on April 4, 2002 and attended the program for approximately two weeks before dropping out. (Verified answer H 10.) Petitioner does not see any benefit to his continued participation because he contends that he is not a substance abuser and ASAT does not provide any information regarding the treatment of hepatitis C. (See verified reply 10.) It is uncontested that during his two-week period of enrollment in ASAT, petitioner did not receive medical treatment for his hepatitis C. It would appear that the medical regimen prescribed for petitioner is Pegintron once a week. (Verified answer, exhibit 4-G.)
On or about May 12, 2002, petitioner filed an inmate grievance complaint with the inmate grievance resolution committee (IGRC) based on a nurse’s denial of treatment to him. (Verified answer, exhibit 1.) This denial is set forth in a memorandum dated April 18, 2002 from K. Capuano, RN NA, which advises petitioner that he is being denied treatment for his hepatitis C based on his failure to enroll in the ASAT program which is a “co-requisite for Hep C treatment” and therefore, petitioner “will not be approved for Hep C treatment as per Albany.” (Verified answer, exhibit 4-E.) After the hearing on petitioner’s grievance on May 16, 2002, the IGRC recommended “that a meeting be arranged for the grievant, medical staff, and Alcohol and Substance Abuse Treatment (ASAT) personnel” to explain concerns of grievant. (Verified answer, exhibit 2.)[2] Thereafter, on May 22, 2002, petitioner’s grievance requesting medical treatment was denied by the superintendent on the following grounds: “Investigation determined that Grievant has refused ASAT. The medical regimen grievant needs requires participation in the ASAT program. Until such time as grievant agrees to ASAT participation, grievant can not receive the treatment.” (Verified answer, exhibit 3 [emphasis added].) Petitioner continued his quest for medical treatment over the next several months by writing to both respondent Wright (verified answer, exhibit 4-D) and to his treating physi *525 cian, Dr. Halko (verified answer, exhibit 4-G),[3] but to date, petitioner has not received any medical treatment for his hepatitis C.[4]
It appears that petitioner is under the impression that he must complete the ASAT program before he may receive any medical treatment (see verified reply 11, at 6), whereas respondents’ opposition papers and documents suggest that enrollment in ASAT is sufficient in order to receive treatment.
While the court suspects petitioner may have been advised that he needed to complete ASAT prior to his being eligible to receive treatment, there are documents from respondents’ files confirming that ASAT is a corequisite which may occur concurrently with treatment and, therefore, the court will assume, for the purposes of this decision, that petitioner only needed to be enrolled and did not need to complete the six-month course in order to receive treatment.
Respondents contend that this court should not interfere with the Department of Correctional Services’ regulations and that their denial of medical treatment to petitioner is in full compliance with the law. Thus, respondents state that they have not acted unconstitutionally, erroneously, improperly, arbitrarily or capriciously because
“the New York State Department of Correctional Services, Division of Health, dictates procedures to be followed regarding the treatment of inmates with Hepatitis C * * * If an inmate has a history of substance abuse, the inmate must successfully complete or be enrolled in an ASAT program in order to participate in medical treatment program for Hepatitis C. Petitioner, during a medical exam admitted to prior abuse of both alcohol and drugs * * * Since Petitioner refuses to attend ASAT programming, Respondent is acting in accordance with New York State Department of Corrections *526 Procedure in denying Petitioner the medical treatment in question.” (Verified answer 10.)
By contrast, petitioner argues respondents’ actions are “arbitrary, capricious, and an abuse of discretion” and that their requirement that he attend the ASAT program prior to receiving treatment lacks a rational basis. (Petition 26.) Petitioner also astutely argues that
“Inmates by law are under the New York State DOCS care and protection. While an inmate loses certain rights while he is incarcerated, he does not lose his right to the very same rights to proper medical treatment, as is afforded to the average citizen, who is not incarcerated and can chose [sic] to be given medical treatment and what kind. There is a patient’s bill of rights that applys [sic] to all citizens, free or incarcerated. If, a free citizen was diagnosed as having Hepatitis C, with focal Septal fibrosis of the liver. He could and would seek and acquire proper medical treatment immediately and no one including the health department would try to force him/her to first take a six (6) month ASAT course, prior to being treated [sic].” (Verified reply 11, at 4-5.)
Legal Analysis
This court is mindful of the precedent which requires courts to defer and not interfere with legitimate penological objectives embodied in Department of Correctional Services’ regulations. However, this case strikes a discordant chord given the repercussions of respondents’ failure to afford petitioner the medical care he so desperately needs. Furthermore, while the treatment of hepatitis C is still in its infancy — there being no known cure or even a set protocol for treatment[5] — this court finds no treatment at all to be repugnant to our standards of decency. “The [Eighth] Amendment embodies ‘broad and idealistic concepts of dignity, civilized standards, humanity, and decency * * (People v Notey, 72 AD2d 279, 283 [1980] [citations omitted]). An inmate is helpless to obtain medical treatment on his own and must entrust his care to the Department of Correctional Services’ medical personnel. It is for this *527 reason that the court is granting the relief petitioner seeks by ordering respondents to treat petitioner with the medical regimen that has been prescribed.
There is no issue that respondents’ decision is required by the procedures set forth by the New York State Department of Correctional Services, Division of Health, concerning the treatment of inmates with hepatitis C. Thus, the procedures dictate that “[ijf an inmate has a history of substance abuse, the inmate must successfully comp[l]ete or be enrolled in an ASAT program in order to participate in medical treatment program for Hepatitis C.” (Verified answer ]j 10.) Respondents cite Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck (34 NY2d 222 [1974]) and Matter of Diocese of Rochester v Planning Bd. (1 NY2d 508 [1956]) and argue that the standard of review to be applied to respondents’ denial of medical treatment is “whether there is a rational basis for the action, or whether the action is arbitrary and capricious.” (Verified answer ][ 8.) This argument, however, misses the crux of petitioner’s claim, however inartfully made, which is that respondents’ failure to provide him with the necessary medical care has subjected him to cruel and unusual punishment in violation of the Eighth Amendment.
It is well settled that the Eighth Amendment’s Cruel and Unusual Punishment Clause prohibits “the deliberate indifference to [a prisoner’s] serious medical needs” (Estelle v Gamble, 429 US 97, 104 [1976]). As explained by the United States Supreme Court:
“These elementary principles establish the government’s obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such failure may actually produce physical ‘torture or a lingering death,’ * * * the evils of most immediate concern to the drafters of the Amendment.” (Estelle, supra, 429 US at 103.)
The indifference may be manifested “by prison doctors in their response to the prisoner’s needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.” {Id. at 104-105.)
An article 78 is the appropriate vehicle for an inmate to pursue a constitutional claim. (See De La Rosa v State of New *528 York, 173 Misc 2d 1007, 1009 [1997]; see also Matter of De Flumer v Dalsheim, 122 AD2d 872 [1986], lv denied 68 NY2d 612 [1986]; Matter of Ronson v Commissioner of Correction, 112 AD2d 488 [1985].) Here, petitioner is requesting that this court issue a mandamus requiring respondents to provide him with the prescribed treatment for his hepatitis C. The standard of review required for mandamus relief has been set forth as follows:
“Mandamus will issue only where there is a clear showing of arbitrary and illegal action, without reasonable explanation or excuse * * * Petitioner must show a clear legal right to the relief requested * * * Mandamus is a drastic remedy and should only be used in extraordinary circumstances * * * The court must examine whether the acts of the respondents were arbitrary and capricious; an arbitrary and capricious act is one which is contrary to the Constitution, contrary to law, without legal authority, or outside the scope of a statute.” (Matter of Parkinson v Columbia County Dist. Attorney, 178 Misc 2d 52, 54 [1998].)
Accordingly, if this court finds respondents’ actions to be in derogation of petitioner’s constitutional rights, mandamus may issue.
Turning to petitioner’s constitutional claims, a finding of deliberate indifference under the Eighth Amendment requires “an objective determination of whether there has been a serious deprivation of an inmate’s constitutional right, and a subjective examination of the prison official’s state of mind to ascertain if that official deliberately delayed, denied, or interfered with appropriate medical treatment.” (De La Rosa, supra, 173 Misc 2d at 1008-1009.)[6] The objective test requires that the prisoner “demonstrate that the alleged medical need is ‘sufficiently serious’, * * * [which is met] where ‘the failure to treat a prisoner’s condition could result in further significant *529 injury or the unnecessary and wanton infliction of pain.’ ” (Johnson v Wright, 234 F Supp 2d 352, 359 [2002] [citations omitted].) Under this test, a number of courts have held (and this court similarly finds) that there can be no question but that “Hepatitis C qualifies as a serious condition for purposes of an Eighth Amendment analysis.” (Id. at 360, citing McKenna v Wright, 2002 WL 338375, 2002 US Dist LEXIS 3489 [2002]; Carbonell v Goord, 2000 WL 760751, 2000 US Dist LEXIS 8227 [2000].)
The subjective prong of the analysis requires that the inmate
“show that the defendant officials acted with a ‘sufficiently culpable state of mind’ in depriving the prisoner of adequate medical treatment * * * [namely, that] the official must ‘know[] of and disregard [ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.’ ” (Johnson, supra, 234 F Supp 2d at 360-361.)
“An inadvertent failure to provide medical care or the commission of negligence in diagnosis and treatment by a prison physician or medical personnel will not entitle petitioner to relief.” (Ronson, supra, 112 AD2d at 489.) However, “ ‘[pjrison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner’s doctors’ * * * [and] ‘[i]f a defendant consciously chose to disregard a nurse or doctor’s directions in the face of medical risks, then he may well have exhibited the necessary deliberate indifference.’ ” (Johnson, supra, 234 F Supp 2d at 361 [citations omitted].)
In Johnson, the plaintiff inmate’s hepatitis C had been treated with Interferon, but the prescription was later changed to Rebetron upon his hepatitis C relapse. In that case, the prison officials denied plaintiff inmate the Rebetron therapy for 15 months because a prison policy prohibited that therapy if an inmate had tested positive for illegal drugs. The plaintiff inmate argued that the policy was unrelated to any medical judgment and was merely meant to serve as a “ ‘punish [ment] for illegal drug use.’ ” (Id. at 362.) Based on the facts as presented in the complaint, the court denied defendants’ motion to dismiss finding the complaint stated a claim under the Eighth Amendment:
“it was improper for a prison official to refuse to provide an available treatment — with no medical *530 justification underlying the decision — where that treatment had been recommended unanimously by prison and outside treating doctors and was deemed necessary by them for the prisoner to combat a serious illness such as Hepatitis C.” (Id. at 362, 367.)[7]
In another federal case, an inmate brought a section 1983 action based on defendants’ denial of treatment for his hepatitis C condition, which resulted from the inmate’s refusal to enroll in the exact same program at issue in this proceeding — ASAT. In that case, defendants asserted that it was “counterproductive, ill-advised, and potentially dangerous for substance abusers, and that [plaintiff], who has a history of drug and alcohol troubles, ought not to begin such therapy without concurrently participating in a substance-abuse program.” (Conti v Goord, 2003 WL 1228033, *1, 2003 US App LEXIS 5463, *2 [2003] [internal quotation marks omitted].) In Conti, while the Second Circuit upheld the District Court’s denial of a preliminary injunction on the ground that plaintiff failed to provide evidence to support a finding of deliberate indifference, the court nevertheless held that the documents submitted by plaintiff showing that his substance abuse problems were a thing of the past and that other inmates were not required to participate in the ASAT program prior to receiving treatment:
“raise the possibility that [plaintiff] will be able to establish ‘deliberate indifference’ at trial, on the theory (a) that Defendants have applied their policy selectively, and adversely, to [plaintiff]; or (b) that the policy itself manifests ‘deliberate indifference,’ insofar as it entails denying treatment to prisoners who have completed substance-abuse programs in the past and have since displayed no signs of drug or alcohol use.” (Conti, 2003 WL 1228033, *2, 2003 US App LEXIS 5463, *5 [2003].)
Here, there is an admission in respondents’ records regarding petitioner that there has not been any “[a]ctive alcohol or *531 other substance abuse within the past two years.” (See verified petition, exhibit F.) While there is no information provided with regard to whether petitioner ever completed a substance abuse program, this court finds this omission inconsequential because respondents admit that petitioner has been clean for at least two years. This, coupled with petitioner’s claims that the last time he used either alcohol or heroin was over 30 years ago, convince the court that the ASAT program is irrelevant for this petitioner and cannot, as a matter of law, provide a medical justification for the continued denial of medical treatment. Respondents have not alleged that treatment was being denied to petitioner based on a medical justification — i.e., that treatment is contraindicated for a current drug/alcohol user such as petitioner or that ASAT is necessary for petitioner because even though he is not currently abusing drugs or alcohol, he is likely to relapse without ASAT’s assistance. Instead, there is not a scintilla of evidence (let alone any assertions) showing that petitioner is a current substance abuser or likely to relapse. Accordingly, respondents’ policy as applied to this petitioner is arbitrary and capricious and results in a deliberate denial of medical attention to his serious medical condition in violation of the Eighth Amendment. Respondents are hereby ordered to initiate the medical treatment that has been prescribed petitioner on or before June 6, 2003.

. ASAT is a six-month rehabilitation program for substance abusers which apparently requires full-day attendance. This time commitment would evidently interfere with petitioner’s full schedule of attending school during the day and working as a porter at night. (Verified answer, exhibit 4-G.)

. According to petitioner, this meeting never took place. (Verified reply If 7, at 2.)

. Based on petitioner’s September 13, 2002 letter to Dr. Halko, Dr. Halko had prescribed Pegintron once a week for the treatment of petitioner’s condition, but the pharmacy never filled the prescription due to the ongoing dispute between petitioner and respondents. (Verified answer, exhibit 4-D.)

. While respondents have continued to refuse to provide petitioner with medicine, petitioner did receive, subsequent to the filing of the instant petition, a hepatitis B vaccine. (Verified reply 7, at 2.) That vaccine is necessary because, according to respondents’ hepatitis C primary care practice guideline, “[p]atients with chronic hepatitis C are at higher risk for morbidity and mortality if they develop either acute hepatitis A or B.” (Verified answer, exhibit 4-A.)

. In this regard, respondents’ hepatitis C primary care practice guideline states “[t]his guideline represents the current state of knowledge regarding treatment agents for the management of hepatitis C. However, this field of science is evolving very rapidly. New information and treatment agents will result in changes in therapeutic options.” (Verified reply, exhibit 4-A.)

. While New York courts apply a different standard — “the importance of the right asserted and the extent of the infringement are weighed against the institutional needs and objectives being promoted” — to denials of other constitutional rights by prison officials based on prison regulations (see Matter of Lucas v Scully, 71 NY2d 399, 406 [1988]), this court has found no cases in New York suggesting that this lesser standard applies to a claim of cruel and unusual punishment under the Eighth Amendment. The Ninth Circuit has expressly declined to use the similar federal standard (see Turner v Safley, 482 US 78 [1987]) to cases alleging Eighth Amendment violations. (See Linderman v Vail, 2003 WL 246919, 2003 US App LEXIS 1905 [2003].)

. In Johnson, defendants argued that there was a medical justification for the treatment decision, namely, that “ ‘drug’ use * * * is incompatible with treatment for Hepatitis C.” (Johnson, 234 F Supp 2d at 362.) However, because the Johnson court could only look at the face of the complaint, and not at any outside evidence in deciding the motion to dismiss, the court disregarded the medical evidence presented by defendants. Here, there is no evidence that petitioner has tested positive for drug or alcohol use since his incarceration in 1999 and indeed, there is an admission in respondents’ records that with regard to petitioner, there has not been any “[a]ctive alcohol or other substance abuse within the past two years.” (See petition, exhibit F.)