| |
|---|
| **Roye v State of New York** |
| 2010 NY Slip Op 34127(U) |
| September 30, 2010 |
| Court of Claims |
| Docket Number: UID: 2010-039-206 |
| Judge: James H. Ferreira |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# Synopsis

Movant's application for permission to file a late claim, pursuant to Court of Claims Act §10 (6), is denied. Movant appears to allege wrongful confinement, violations of State regulations regarding the right to call witnesses at a disciplinary hearing, violation of Correction Law § 610, and constitutional torts involving due process violations at his disciplinary hearing and interference with his exercise of religion. The Court is without jurisdiction. Sufficient proof was offered to establish that the notice of intention was not properly served as required by Court of Claims Act § 11 (a) (I). Moreover, following an analysis of the § 10 (6) factors, the Court concludes, among other things, that the claim does not appear to be meritorious and that an alternative avenue of redress exists.

# Case information

| | |
|---|---|
| UID: | 2010-039-206 |
| Claimant(s): | DAVE ROYE |
| Claimant short name: | ROYE |
| Footnote (claimant name) : | |
| Defendant(s): | STATE OF NEW YORK |
| Footnote (defendant name) : | |
| Third-party claimant(s): | |
| Third-party defendant(s): | |
| Claim number(s): | |
| Motion number(s): | M-78310 |
| Cross-motion number(s): | |
| Judge: | James H. Ferreira |
| Claimant's attorney: | Dave Roye, pro se |
| Defendant's attorney: | Hon. Andrew M. Cuomo<br>Attorney General of the State of New York<br>By: Michael C. Rizzo<br>Assistant Attorney General |
| Third-party defendant's attorney: | |
| Signature date: | September 30, 2010 |
| City: | Albany |
| Comments: | |
| Official citation: | |
| Appellate results: | |
| See also (multicaptioned case) | |

# Decision

Movant, an inmate at Coxsackie Correctional Facility, filed a motion with the Clerk of the Court of Claims on May 25, 2010, pursuant to Court of Claims Act § 10(6), seeking permission to file a late claim arising from an inspection of his cell on July 18, 2009. Movant's submissions appear to allege wrongful confinement, violations of State regulations regarding the right to call witnesses at a disciplinary hearing, violations of Correction Law § 610, and constitutional torts involving due process violations at his disciplinary hearing and interference with his exercise of religion.[1] Defendant opposes the motion on the basis that movant has not proffered an acceptable excuse for the delay and that the Proposed Claim does not appear to be meritorious. Defendant argues further that

[* 1]

a notice of intention that movant had served on defendant was neither personally served upon the Attorney General, nor served by certified mail, return receipt requested, as required by Court of Claims Act § 11 (a).

In the instant case, movant alleges that during a search of his cell on July 18, 2009, Correction Officer Michalski found and seized, inter alia, eight photographs depicting movant and other Rastafarian members displaying the triangle symbol in a downward position. C.O. Michalski subsequently prepared a misbehavior report charging movant with, inter alia, possession of gang material(Proposed Claim at Exhibit A). A Tier III disciplinary hearing was held on July 28 and 29, 2010 (Proposed Claim at Exhibit C). Movant requested the testimony of Prison Chaplain Reddy, C.O. Michalski and David Cole, the prison recreation supervisor, who also functions as a gang specialist. Captain Shanley, the hearing officer, allowed Cole to testify, but denied in writing the requests for Reddy and Michalski to testify on the grounds that Reddy's testimony "is in Material [sic] Not an expert in Gang Photo's" and that C.O. Michalski's testimony "would be Redundant" (Proposed Claim at Exhibit D). Movant was found guilty of the possession of gang material charge and sanctions were imposed, including sixty days keeplock, restrictions of certain privileges such as commissary and phone use, and the destruction of the seized photographs (Proposed Claim at Exhibit B).[2] Movant subsequently submitted an administrative appeal dated August 3, 2009 (Proposed Claim at Exhibit F). By decision rendered September 16, 2009, the Director for Special Housing/Inmate Disciplinary Program reversed the July 29, 2009 hearing decision (Proposed Claim at Exhibit G). No explanation for the reversal was provided.

Thereafter, movant filed an Inmate Grievance Complaint dated October 1, 2009, seeking one million dollars on the grounds that he was wrongfully confined because of his religious beliefs (see id. at Exhibit I). The grievance was denied by the Inmate Grievance Program Superintendent, who noted that "monetary awards are beyond the purview of the IGRC" (id.). Movant appealed that determination. In a decision dated November 18, 2009, the Central Office Review Committee (CORC) affirmed the Superintendent's determination, stating that monetary relief is not available through the grievance process. CORC stated further that "the reversal of the grievant's misbehavior report does not constitute malfeasance on the part of staff" and that "CORC has not been presented with sufficient evidence that staff were unfair or unprofessional during the grievant's disciplinary proceeding" (id.).

Preliminarily, defendant has offered sufficient proof in opposition to movant's motion to establish that the notice of intention was not properly served as required by Court of Claims Act § 11 (a) (i). That section provides, in relevant part, that "[a]ny notice of intention shall be served personally or by certified mail, return receipt requested, upon the attorney general within the times hereinbefore provided for service upon the attorney general." "The Court of Appeals has noted in interpreting the above provision that 'statutory requirements conditioning suit must be strictly construed' " (Rodriguez v State of New York, 307 AD2d 657 [2003], quoting Dreger v New York State Thruway Auth., 81 NY2d 721, 724 [1992]). It is well settled that "[o]rdinary mail is not one of the methods of service authorized by Court of Claims Act § 11 (a) and, '[g]enerally, the use of ordinary mail to serve the claim upon the Attorney-General is insufficient to acquire jurisdiction over the State' " (Turley v State of New York, 279 AD2d 819, 819 [2001], quoting Philippe v State of New York, 248 AD2d 827 [1998]; see also Govan v State of New York, 301 AD2d 757, 758 [2003], lv denied 99 NY2d 510 [2003]; Edens v State of New York, 259 AD2d 729 [1999]).

In opposition to the motion, defendant offers the affidavit of Assistant Attorney General Michael C. Rizzo. Attached to the affidavit is, inter alia, a copy of the notice of intention, the mailed envelope and an affidavit of service (see Affidavit in Support of Defendant's Motion to Dismiss, Exhibit A).[3] These documents indicate that the notice of intention was served on the Office of the Attorney General by regular mail on October 8, 2009 (see id.). Notably, the envelope does not contain a return receipt, and the affidavit of service indicates the notice of intention was mailed in a "post paid wrapper" to the Attorney General's Office after deposit in "an official depository of the Unites States Postal Service, said box being under the exclusive care of the New York State Department of Correctional Services" (id.). Moreover, movant does not dispute the manner of service (see Motion for Permission to File a Late Claim, ḳ 2). Thus, movant has not acquired jurisdiction over the State because the notice of intention was sent by regular mail. Consequently, movant now seeks permission from the Court to file a late claim.

Court of Claims Act § 10 (6) provides, in relevant part, that

"[a] claimant who fails to file or serve upon the attorney general a claim or to serve upon the attorney general a notice of intention, as provided in the foregoing subdivisions, within the time limited therein for filing or serving upon the attorney general the claim or notice of intention, may, nevertheless, in the discretion of the court, be

[* 2]

permitted to file such claim at any time before an action asserting a like claim against a citizen of the state would be barred under the provisions of article two of the civil practice law and rules."

"[A] motion for leave to serve a late claim may not be entertained after the statute of limitations for a 'like claim against a citizen of the state' has expired" (Crum and Foster Ins. Co. v State of New York, 25 AD3d 643, 644 [2006]; see also Williams v State of New York, 235 AD2d 776 [1997] lv denied 90 NY2d 806 [1997] ["Court of Claims § 10 (6) permits the late filing of a claim but only if the application is made within the applicable Statute of Limitations period"]; Marine Midland Bank, N.A., v State of New York, 195 AD2d 871, 872 [1993], lv denied 82 NY2d 661 [1993] ["claimant is permitted to file a late claim only if the underlying cause of action is not time barred"]). Identifying the applicable statute of limitations from article two of the civil practice law and rules "depends upon the nature of the cause of action asserted" (O'Neal v State of New York, UID No. 2007-015-145, Claim No. 112354, Motion Nos. M-72277, M-72300, January 9, 2007, Collins, J). To the extent that movant seeks damages for his alleged wrongful confinement, the Court concludes that the application for late claim relief is timely. It is well settled that "[a] claim for wrongful confinement accrues on 'the date on which [claimant's] confinement terminated' " (Jones v State of New York, UID No. 2010-041-020, Claim No. 118080, Motion No. M-78009, Milano, J., May 10, 2010, quoting Santiago v City of Rochester, 19 AD3d 1061, 1062 [4th Dept 2005], lv denied 5 NY3d 710 [2005]). Here, the earliest date of accrual was September 16, 2009, the date the Superintendent's Decision imposing 60-days keeplock was reversed (see Proposed Claim at Exhibit G).

Allegations of wrongful confinement have been interpreted by courts both as an intentional tort, in that such allegations may be "considered a 'species' of false imprisonment," (O'Neal v State of New York, supra, quoting Gittens v State of New York, 132 Misc 2d 399 [1986]), and, within the prison setting, as sounding in negligence, in that "liability for wrongful confinement may be imposed for ministerial errors" (id.; see also Ramirez v State of New York, 171 Misc 2d 677 [1997]; Sudler v State of New York, UID #2009-038-546, Motion No. M-76072, June 3, 2009, DeBow, J.). The statute of limitations for an action to recover damages for the tort of false imprisonment, or wrongful excessive confinement, is one year, and for wrongful confinement sounding in negligence, the statute of limitations is three years (see CPLR §§ 215 [3] and 214). In either instance, movant's late claim application is timely since his motion papers were filed with the Chief Clerk of the Court of Claims on May 25, 2010, within one year following the accrual of the claim (see Proposed Claim at Exhibit G).

The causes of action alleging constitutional torts[4] - violation of movant's due process rights during his disciplinary hearing and his right to exercise his religion - are subject to a three year statute of limitations pursuant to CPLR § 214 (5) (see Brown v State of New York, 250 AD2d 314, 318 [1998]). Thus, since the instant motion was filed on May 25, 2010, and these particular causes of action accrued, at the earliest, in July 2009, the motion is timely, and the Court has jurisdiction to determine its merits.

It is well settled that "[t]he Court of Claims is vested with broad discretion to grant or deny an application for permission to file a late claim" (Matter of Brown v State of New York, 6 AD3d 756, 757 [2004]; see also Calco v State of New York, 165 AD2d 117, 119 [1991], lv denied 78 NY2d 852 [1991]). When deciding whether to grant an application to file a late claim, the court is required to consider

"among other factors, whether the delay in filing the claim was excusable; whether the state had notice of the essential facts constituting the claim; whether the state had an opportunity to investigate the circumstances underlying the claim; whether the claim appears to be meritorious; whether the failure to file or serve upon the attorney general a timely claim or to serve upon the attorney general a notice of intention resulted in substantial prejudice to the state; and whether the claimant has any other available remedy" (Court of Claims Act § 10 [6]).

"No single factor is deemed controlling, as the presence or absence of any one factor is not determinative" (Matter of Beckford v State of New York, 264 AD2d 841 [1999]; see also Bay Terrace Coop. Section IV v New York State Employees Retirement Sys., Policemen's & Firemen's Retirement Sys., 55 NY2d 979, 981 [1982]).

As to the excuse proffered by movant for the delay in filing the claim, movant attributes the delay to the actions of "the inmate law clerk who . . . failed to inform him of the correct process of service of the notice" (Motion for Permission to File a Late Claim, ¶ 2). "To be sure, ignorance of the law is not an acceptable explanation for the failure to serve a timely notice of claim" (Matter of Sandlin v State of New York, 294 AD2d 723, 724 [2002], lv dismissed 99 NY2d 589 [2003]; see also Matter of Lynch v State of New York, 2 AD3d 1002 [2003]; Matter of Thomas v State of New York, 272 AD2d 650, 651 [2000]). Accordingly, this factor weighs against movant.

The three Court of Claims Act § 10 (6) factors of notice of the essential facts, an opportunity to investigate and the lack of substantial prejudice weigh in movant's favor. The disciplinary incident underlying the instant motion

[* 3]

was investigated by defendant and was the subject of an administrative appeal in which defendant was a party. In addition, defendant does not contest these factors in opposition to the motion.

However, "the factor that has been characterized as the most decisive component in determining a motion under Court of Claims § 10 (6) . . . [is] whether the proposed claim appears meritorious" (Dippolito v State of New York, 192 Misc 2d 395, 396 [2002]), "as it would be futile to permit a defective claim to be filed even if the other factors in Court of Claims Act § 10 (6) supported the granting of the claimant's motion" (Savino v State of New York, 199 AD2d 254, 254-255 [1993]. "In order for a claim to 'appear to be meritorious' . . . it must not be patently groundless, frivolous, or legally defective, and . . . the court must find, upon consideration of the entire record, including the proposed claim and any affidavits or exhibits, that there is reasonable cause to believe that a valid cause of action exists" (Matter of Santana v New York State Thruway Auth., 92 Misc 2d 1, 11 [1977]; see also Rizzo v State of New York, 2 Misc 3d 829, 833-834 [2003]).

It is well established that the actions of correctional facility employees with respect to inmate disciplinary matters are quasi-judicial in nature and, unless the employees exceed the scope of their authority or violate the governing rules and regulations, the State has absolute immunity for those actions (Arteaga v State of New York, 72 NY2d 212 [1988]; Holloway v State of New York, 285 AD2d 765 [2001]; Varela v State of New York, 283 AD2d 841 [2001]; Davis v State of New York, 262 AD2d 887 [1999]; see also Winfield v State of New York, UID No. 2008-015-036, Claim No. None, Motion No. M-74528, May 13, 2008 [Collins, J.]). This principle flows from the reality that decisions to prepare and file misbehavior reports, confine inmates, and make dispositions following Superintendents' hearings "entail discretionary decisions . . . where the exercise of reasoned judgment can produce different acceptable results" (Arteaga v State of New York, supra at 219).

As the Court of Appeals recognized, the absolute immunity afforded corrections personnel who undertake authorized prison disciplinary measures is grounded in policy considerations:

In carrying out their duties relating to security and discipline in the difficult and sometimes highly stressful prison environment, correction employees, like other officials with quasi-judicial responsibilities, should not be inhibited because their conduct could be the basis of a damage claim.

* * *

Because of the unquestioned risks to inmates, employees, and the public from a breakdown in order and discipline in correctional facilities . . . it is particularly important that correction officers not be dissuaded by the possibility of litigation from making the difficult decisions which their duties demand. Nor should correction personnel acting as reviewing officers feel reluctant to reverse hearing determinations because doing so might expose the State to liability.

(id. at 219, 220). This immunity attaches even if the finding of a violation is subsequently reversed administratively or following a successful article 78 proceeding (Holloway v State of New York, supra at 766 [2001]).

Upon applying these principles to movant's claim of wrongful confinement, the Court finds that the claim does not appear to be meritorious. A claim for wrongful confinement must establish that "defendant intended to confine the plaintiff, that the plaintiff was conscious of the confinement and did not consent to the confinement, and that the confinement was not otherwise privileged (Martinez v City of Schenectady, 97 NY2d 78, 85 [2001]). Here, the actions of defendant in bringing disciplinary charges, holding disciplinary hearings and imposing disciplinary penalties are privileged. Such conduct represents the exercise of discretion and quasi-judicial power that is immune from liability under Arteaga v State of New York (supra). The 60 days keeplock imposed on movant is the type of discretionary disposition or decision-making that falls within the lawful duties of correctional personnel (see 7 NYCRR § § 251-1.6, 251-5.1, 253.7, 254.7). No meritorious cause of action for wrongful confinement or false imprisonment lies where the confinement is directed pursuant to statutory or regulatory authorization (see Ramirez v State of New York supra; Gittens v State of New York, supra). Even assuming movant was alleging wrongful excessive confinement within a prison setting, movant has offered no proof that his confinement was beyond the 60 day sanction (see Gittens v State of New York, supra at 406-407).

Movant asserts further that defendant violated regulations governing disciplinary hearings (7 NYCRR Part 253) and superintendent's hearings (7 NYCRR Part 254) by refusing to hear testimony from Chaplain Reddy and C.O. Michalski. 7 NYCRR § 253.5 (a) and § 254.5 (a) provide, in relevant part, that an inmate "may call witnesses on his behalf provided their testimony is material, is not redundant, and doing so does not jeopardize institutional

safety or correctional goals. If permission to call a witness is denied, the hearing officer shall give the inmate a written statement stating the reasons for the denial, including the specific threat to institutional safety or correctional goals presented." Here, the Hearing Officer set forth in writing the reasons for denying movant's request (see Proposed Claim at Exhibit D), and thus, the regulation was not violated (compare Matter of Henderson v New York City Dept. of Correction, 274 AD2d 328 [2000]; DuBois v State of New York, 25 Misc 3d 1137, 1142 [2009]).

Similarly, the allegations that defendant violated Correction Law § 610 do not have the appearance of merit. Movant alleges the photographs seized during the cell frisk by C.O. Michalski were related to his religious beliefs and practices. The Inmate Misbehavior Report prepared by C.O. Michalski describes the seized items as "8 photographs that appear to be of unauthorized gang material" (Proposed Claim at Exhibit A). The Court finds that these actions by the correction officer - removing materials believed to be gang material from movant's cell and then filing an Inmate Misbehavior Report - were quasi-judicial acts within "the 'formidable tasks' of maintaining order and security in correctional facilities and protecting the safety of inmates and employees" (Arteaga v State of New York, supra at 217). Such conduct reflects the exercise of a discretionary function or judgment call and falls within the ambit of actions for which the State has absolute immunity.[5] Moreover, an "[i]nmate['s] rights to religious freedom must be balanced against security considerations and the State's legitimate correctional goals" (Matter of Cancel v Goord, 278 AD2d 321, 323 [2000], lv denied 96 NY2d 707 [2001]). Barring an inmate from possession of materials perceived by a correction officer to be gang-related is a legitimate goal consistent with maintaining order and security in a prison setting (see Matter of Mercado v Selsky, 47 AD3d 1167, 1168 [2008], lv denied 10 NY3d 713 [2008]; Matter of Buford v Goord, 258 AD2d 761, 762 [1999]).

As to the constitutional torts alleging that defendant denied movant his due process right to call witnesses and present evidence at his hearing, and interfered with his religious freedoms, it must be noted that the Court of Appeals has "recognized the existence of a constitutional tort as a 'narrow remedy' to assure a constitutional provision's effectiveness and to further its purpose" (Love v State of New York, UID No. 2009-044-546, Claim No. 116463, Motion Nos. M-76444 and M-76615, August 12, 2009 [Schaewe, J.], quoting Brown v State of New York, supra at 192; Laraby v State of New York, UID No. 2010-015-508, Claim No. 113283, February 23, 2010 [Collins, J.]). Moreover, "[a] constitutional tort claim is barred when a [movant] has an alternative legal remedy to protect his or her constitutional rights" (Deleon v State of New York, 64 AD3d 840 [2009], lv denied 13 NY3d 712 [2009]; see Martinez v City of Schenectady, supra at 83; Shelton v New York State Liq. Auth., 61 AD3d 1145, 1150 [2009]; Waxter v State of New York, 33 AD3d 1180, 1181-1182 [2006]; Bullard v State of New York, 307 AD2d 676, 678-679 [2003]).

Upon applying these principles to this motion, the Court finds that neither of these constitutional claims have the appearance of merit. As to the allegations regarding due process violations during the disciplinary hearing, movant could have availed himself of alternative remedies such as seeking Article 78 relief (see e.g. Matter of Stallone v Fischer, 67 AD3d 125 [2009]; Matter of Paton v Coughlin, 225 AD2d 991 [1996]; Matter of Domenech v Goord, 196 Misc 2d 522, 527-528 [2003], appeal dismissed 20 AD3d 416 [2005]). In any event, "[w]hile an inmate has a conditional right to call witnesses at a disciplinary hearing (see 7 NYCRR 254.5 [a]), there is no absolute right to confront or cross-examine them (see Matter of Abdur-Raheem v Mann, 85 NY2d 113, 119 [1995])" (Matter of Murphy v Selsky, 3 AD3d 631, 632-633 [2004]). Further, where the hearing officer has made written determinations that the testimony of the requested witnesses would be "redundant, irrelevant or threatening to the facility's safety", the officer's decision not to call them does not constitute a violation of movant's due process rights (Matter of Lewis v Lacy, 233 AD2d 637 [1996]; see also Matter of Boyd v Coughlin, 216 AD 2d 617 [1995]). Here, Captain Shanley allowed testimony from Coles, a DOCS employee with knowledge about gangs, but denied, in writing, the requests to call Reddy, on the grounds that such testimony would be immaterial, and C.O. Michalski, because his testimony would be redundant (Proposed Claim at Exhibit D). Accordingly, to the extent movant alleges a State constitutional due process violation, the Court finds that the cause of action has no appearance of merit.

As to the cause of action alleging that defendant infringed upon movant's right to exercise his religion, Correction Law § 610 (3) directs an inmate who believes that he or she has been aggrieved to seek relief by instituting "proceedings in the supreme court of the district where such [correctional facility] is situated, which is hereby authorized and empowered to enforce the provisions of the section." In light of this alternative avenue of redress under Correction Law § 610 (3), the Court "does not find that an action for money damages in the Court of Claims is necessary to ensure the full realization of [movant's] constitutional rights" (Laraby v State of New York, supra; see also Love v State of New York, supra). Even assuming no alternative avenue of relief was available, the Court finds that the cause of action does not have sufficient merit. While it is undisputed that the

State constitutional right to religious freedom provided under section 3 of article 1 of the State Constitution is extended to those incarcerated in New York correctional facilities by Correction Law § 610 (Matter of Rivera v Smith, 63 NY2d 501, 510-511 [1984]), as noted earlier, defendant's actions in this instance - the seizing of the photographs on the grounds that they may be gang material and the resulting disciplinary measures - are immune from liability and consistent with legitimate correctional objectives.

Denial of an application for late claim relief is proper "where 'the excuse offered for the delay is inadequate and the proposed claim is of questionable merit' " (Matter of Robinson v State of New York, 35 AD3d 948, 949-950 [2006], quoting Matter of Perez v State of New York, 293 AD2d 918, 919 [2002]; see also Matter of Brown v State of New York, supra at 757 [2004]). Thus, the Court concludes that, upon balancing all of the factors set forth in Court of Claims Act § 10 (6), late claim relief is not appropriate.

Accordingly, it is ORDERED that M-78310, movant's motion for permission to file a late claim, is denied.

September 30, 2010

Albany, New York

James H. Ferreira

Judge of the Court of Claims

Papers Considered:

1. Claimant's Notice of Motion dated April 30, 2010;

2. Claimant's Motion For Permission to File a Late Claim against the State and Proposed Claim sworn to on May 20, 2010, with exhibits;

3. Defendant's Affidavit in Support of Defendant's Motion to Dismiss by Assistant Attorney General Michael C. Rizzo sworn to on June 8, 2010, with exhibit; and

4. Claimant's Reply filed on June 24, 2010, with the Office of the Chief Clerk, New York State Court of Claims.

---

1. The Notice of Intention prepared October 6, 2009, states that "[t]his is a claim for wrongful confinement for religious beliefs" (Proposed Claim at Exhibit J). The Proposed Claim alleges a first cause of action based on a violation of his "clear right to call witnesses and to present evidence in his disciplinary hearing" (Proposed Claim, ¶ 13) and a second cause of action based on "depriving [movant] his State constitutional (N.Y. State Const. Art. 1 & 3) and procedural (N.Y. Corr. 610) right of exercising his religion" (id. at ¶ 22).

2. The document reflecting the hearing disposition states that the 60 day keeplock start date was July 18, 2009, the date movant's cell was inspected, and that the release date was scheduled for September 18, 2009 (Proposed Claim at Exhibit B).

3. Although defendant's submission is labeled "Affidavit in Support of Defendant's Motion to Dismiss", the affidavit is submitted in opposition to movant's motion to file a late claim (Exhibit A, ¶ 2).

4. "A constitutional tort is any action for damages for violation of a constitutional right against a government or individual defendants" (Brown v State of New York, 89 NY2d 172, 177 [1996]).

5. (see Arteaga at 218-219 ["Because of the problems of maintaining security and discipline within correctional facilities, the discretion delegated to the employees and officers is necessarily comprehensive and calls for the exercise of judgment under widely varying conditions. What, if any, disciplinary action to take in a given situation is a matter requiring consideration of broad policies and objectives in the application of the governing rules and regulations to the particular circumstances"]; see also Holloway v State of New York, supra at 766; Ramirez v State of New York, supra at 679).

<& /claims/inclusions/footer.htm &>