OPINION OF THE COURT
Phillip R. Rumsey, J.
Several motions are currently pending.[1] The court will first consider those made by defendant Town of Greene which, if granted, would result in dismissal of plaintiffs’ remaining claim for negligent design and construction of the guiderail, namely: (1) defendant’s motions asserting that plaintiffs’ design claim is barred by the statute of limitations and (2) defendant’s motion for leave to renew its 2007 summary judgment motion, which is based on the argument that — due to changes in the law — it is now entitled to absolute immunity from plaintiffs’ remaining claim.[2]
*854 Defendant’s Statute of Limitations Defense
In a decision and order dated March 17, 2011, this court determined, inter alia, that plaintiffs’ claim for negligent design is not barred by the statute of limitations, because it accrued upon the happening of the accident (see decision and order dated Mar. 17, 2011 [the prior order], at 5 n 2). Defendant moved to reargue the prior order, asserting that the court erred in rejecting its statute of limitations defense. Defendant also appealed the prior order. The appeal was decided while the motion to reargue was pending. The Appellate Division held, on May 3, 2012, in relevant part, that defendant’s argument that the design claim is time-barred was not properly before this court because it was first raised in defendant’s reply affidavit and, therefore, that this court’s comments regarding the statute of limitations — as set forth in a footnote in the prior order — do not constitute the law of the case (see Madden v Town of Greene, 95 AD3d 1426 [2012], citing Willette v Willette, 53 AD3d 753, 755 [2008], Luft v Luft, 52 AD3d 479, 480 [2008], Yechieli v Glissen Chem. Co., Inc., 40 AD3d 988, 989 [2007]). The parties have subsequently had opportunities to fully address the statute of limitations issue — which was not decided on the appeal from the prior order — thereby permitting this court to now properly make a determination on the merits that will constitute the law of the case (see Matter of Kennelly v Mobius Realty Holdings LLC, 33 AD3d 380, 381-382 [2006]; Basile v Grand Union Co., 196 AD2d 836 [1993]; Fiore v Oakwood Plaza Shopping Ctr., 164 AD2d 737 [1991], affd 78 NY2d 572 [1991], cert denied 506 US 823 [1992]; cf. Matter of TIG Ins. Co. v Pellegrini, 258 AD2d 658 [1999]). Accordingly, the court grants defendant’s motion to reargue, in the interest of resolving the statute of limitations issue prior to trial. [3] After considering all of the parties’ respective submissions that address whether the negligent design claim is *855 time-barred — specifically including all that have been filed since the date of the prior order — the court adheres to its original determination {see CPLR 2221 [f]).
A cause of action against a municipality must be commenced “within one year and ninety days after the happening of the event upon which the claim is based” (General Municipal Law § 50-i [1]). A cause of action founded upon the alleged active negligence of a municipality in creating a defective or dangerous condition in a public road arises on the happening of the event that causes the dangerous condition (see Kiernan v Thompson, 73 NY2d 840 [1988]; Sniper v City of Syracuse, 139 AD2d 93, 95 [1988]). By contrast, a negligence claim based upon a municipality’s breach of its continuing nondelegable duty to construct or maintain its public roadways in a reasonably safe condition — a duty that is independent of its duty not to affirmatively create a defective or dangerous condition — accrues on the happening of the accident (see Kiernan, 73 NY2d at 842; Sniper v City of Syracuse, 139 AD2d at 95-96).
In this case, as the court previously noted, plaintiffs’ remaining claim against defendant is a design defect claim:
“Based on the record before it on the [parties’ respective 2007] summary judgment motions, this court held that, insofar as plaintiff alleged that defendant had been negligent by failing to install a proper or sufficient guide rail, he had stated a claim for ‘design defects’ to which written notice provisions do not apply — a determination that was affirmed by the Appellate Division, Third Department (see Madden v Town of Greene, 64 AD3d 1117, 1119 [2009], citing Lugo v County of Essex, 260 AD2d 711, 713 [1999], Temple v Chenango County, 228 AD2d 938, 938 939 [1996]; see also Ferguson v Sheahan, 71 AD3d 1207 [2010]; Merchant v Town of Halfmoon, 194 AD2d 1031 [1993]).” (Prior order at 4-5.)
Claims that a municipality negligently failed to design and install a sufficient guiderail are not founded upon allegations that a municipality affirmatively created a dangerous condi *856 tion — like creating a crack in a sidewalk by removing a tree stump (Kiernan) or creating a depression in a street by repairing a water line (Sniper). Rather, as in this case, they are founded upon allegations that a municipality breached the continuing nondelegable duty to construct and maintain its roads in a reasonably safe condition by (1) failing to install a guiderail in the location where the accident occurred; (2) installing a guiderail that did not meet applicable engineering standards when it was installed; or (3) failing to upgrade a guiderail to meet later design standards when there is a history of accidents or upon significant repair or reconstruction of the road (see Madden, 64 AD3d at 1119-1120; see also Ferguson v Sheahan, 71 AD3d 1207, 1208-1209 [2010]; Lugo v County of Essex, 260 AD2d 711, 713 [1999]; Temple v Chenango County, 228 AD2d 938, 938-939 [1996]; Merchant v Town of Halfmoon, 194 AD2d 1031 [1993]). Accordingly, such claims accrue on the happening of the accident and, therefore, plaintiffs’ design defect claim is timely.[4]
In light of the determination that plaintiffs’ negligent design claim was timely asserted, defendant’s motions seeking leave to file a late motion for summary judgment dismissing plaintiffs’ design claim on the basis that it is time-barred are denied. It further bears noting that such motions must also be denied because defendant failed to show good cause for its delay in *857 seeking such relief (see Brill v City of New York, 2 NY3d 648 [2004]; Coty v County of Clinton, 42 AD3d 612 [2007]; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3212:12). Defendant’s explanation for its delay in seeking leave to file a late summary judgment motion is inherently contradictory and inconsistent with its previous submissions and the decisions previously rendered in this case. While acknowledging that the negligent design and construction issue was raised by plaintiffs in opposition to defendant’s original summary judgment motion — made in July 2007 — it then argues that plaintiffs’ negligent design and construction claim became clear only when they served their expert witness disclosure (see affirmation of Andrew J. Schwab, dated Apr. 26, 2011, 1111 38, 40). Defendant’s explanation is belied by its own submission in 2007 of the affidavit of a licensed professional engineer addressing the issue of guiderail design and by the fact that defendant’s counsel conceded the existence of plaintiffs’ negligent design claim in 2009 (see prior order at 4-5). Clearly, defendant has had notice — at least since this court’s decision dated May 21, 2008 was affirmed by decision dated July 30, 2009 — that plaintiffs had stated a negligent design claim to which written notice provisions do not apply. Defendant provides no plausible explanation for its delay of approximately two years in seeking leave to move to dismiss plaintiffs’ design defect claim based upon its statute of limitations defense. Accordingly, defendant’s motions for leave to file a late summary judgment motion are denied.
Defendant’s Motion to Renew — Qualified Immunity
A motion to renew may be based upon a change in the decisional law that would change the prior determination (see Matter of Patterson v New York State Dept. of Correctional Servs., 71 AD3d 1349 [2010], lv denied 15 NY3d 703 [2010], citing CPLR 2221 [e] [2], Dinallo v DAL Elec., 60 AD3d 620, 621 [2009]). Defendant contends that three cases decided by the Court of Appeals after filing of its original summary judgment motion in 2007 — Valdez v City of New York (18 NY3d 69 [2011]); Dinardo v City of New York (13 NY3d 872 [2009]); and McLean v City of New York (12 NY3d 194 [2009]) — announce a significant change in the law that now requires a determination that it has absolute immunity from plaintiffs’ design defect claim. Specifically, it argues that the doctrine of qualified immunity has been completely replaced by governmental immunity, pursuant to which a municipality may never be liable for any *858 discretionary governmental functions, including highway design. It is mistaken.
The Court of Appeals itself noted that neither Valdez nor McLean announced a new rule, but merely “distilled” the analysis applied in prior cases (see Valdez, 18 NY3d at 76-77).[5] In that regard, both cases serve to clarify the relationship between the special duty rule — necessary to establish a duty of care with respect to certain governmental acts — and the availability of absolute immunity for such acts. A careful reading of Valdez — a police protection case — and McLean — involving municipal registration of a day-care provider — and an analysis of the extensive body of Court of Appeals case law regarding governmental immunity for various types of governmental functions demonstrate that these two cases simply have no bearing on governmental action that has historically been afforded only qualified immunity, like highway design.
“With the enactment of Court of Claims Act § 8, the State waived that immunity which it had enjoyed solely by reason of its sovereign character” (see Arteaga v State of New York, 72 NY2d 212, 215-216 [1988], citing Weiss v Fote, 7 NY2d 579, 585-586 [1960] [citation omitted]). While assuming liability for actions involving everyday government operations, often referred to as ministerial actions, the common-law doctrine of governmental immunity continues to afford public entities immunity for governmental actions requiring the exercise of discretion (id. at 216; see also Valdez, 18 NY3d at 75-76, citing Lauer v City of New York, 95 NY2d 95 [2000], Tango v Tulevech, 61 NY2d 34 [1983]). Significantly though, not all acts requiring the exercise of discretion have been afforded the same level of protection. Acts involving the conscious exercise of discretion of a judicial or quasi-judicial nature — like police protection — have been afforded absolute immunity, even if the action was negligent or malicious (see Arteaga, 72 NY2d at 216, citing Tango, 61 NY2d 34 [1983]). The rationale for affording such acts absolute immunity is to permit public officials to exercise *859 their discretion without fear of retaliatory lawsuits (see Arteaga, 72 NY2d at 216; see also Valdez, 18 NY3d at 75-76). This is the type of governmental function that was directly at issue in Valdez.
By contrast, discretionary actions not of a judicial or quasi-judicial nature, but which require the application of specialized expertise — like highway planning and design decisions — are afforded only qualified immunity (see Arteaga, 72 NY2d at 216, citing Weiss and Friedman v State of New York, 67 NY2d 271 [1986]). Qualified immunity — unlike absolute immunity — is negated by bad faith or the lack of any reasonable basis for the action (see Weiss, 7 NY2d at 586; Friedman, 67 NY2d at 284; Alexander v Eldred, 63 NY2d 460, 466 [1984]; Kreindler, Rodriguez, Beekman & Cook, New York Law of Torts § 17:54 [15 West’s NY Prac Series 2011]). Qualified immunity is based on an entirely different rationale than absolute immunity, namely, judicial deference to the expertise of coordinate branches of government in their performance of planning and design decisions (see Weiss, 7 NY2d at 584-586; see also Selca v City of Peekskill, 78 AD3d 1160, 1161 [2010]). The common-law doctrine of qualified immunity has been applied to highway design cases in New York since at least 1883 — long before the State waived sovereign immunity in 1929 (see Weiss, 7 NY2d 579, 583-585, citing Urquhart v City of Ogdensburg, 91 NY 67 [1883]; see also Friedman, 67 NY2d 271 [1986]; Alexander, 63 NY2d 460 [1984]; Joyce v State of New York, 152 AD2d 306 [1989], lv denied 76 NY2d 703 [1990] [discussing Urquhart and Weiss]; see also Court of Claims Act § 8 [derived from Court of Claims Act of 1920 § 12-a, which was enacted in 1929]).
Defendant’s argument that qualified immunity has been replaced with absolute immunity for all discretionary governmental actions ultimately rests on the Court of Appeals’ observation that “[i]n Tango v Tulevech (61 NY2d 34, 40 [1983]), we made clear that discretionary acts may not be a basis of liability: ‘[W]hen official action involves the exercise of discretion, the officer is not liable for the injurious consequences of that action even if resulting from negligence or malice.’ ” (McLean, 12 NY3d at 194.) Significantly, however, since deciding Tango in 1983 — where it stated that discretionary acts may not be a basis of liability — the Court of Appeals has continued to recognize that discretionary highway design decisions are afforded only qualified immunity (see e.g. Arteaga, 72 NY2d at 216, citing Tango, Friedman, and Weiss; Affleck v Buckley, 96 *860 NY2d 553 [2001] [extending qualified immunity to a municipal defendant for a traffic planning decision, quoting Friedman and citing Wezss]). In addition, the Appellate Division has continued to apply the traditional law of qualified immunity to highway design cases following McLean (see e.g. Reisner v Litman & hitman, P.C., 95 AD3d 858 [2012] [also decided after Valdez]; Kuhland v City of New York, 81 AJD3d 786 [2011]; Brown v State of New York, 79 AD3d 1579 [2010]; Betts v Town of Mount Morris, 78 AD3d 1597 [2010]; Turturro v City of New York, 77 AD3d 732 [2010]; Bresciani v County of Dutchess, N.Y., 62 AD3d 639 [2009]; see also Selca, 78 AD3d 1160 [2010] [a municipality was entitled to qualified immunity from the claim that it negligently designed a dock, where it was able to show that the design was adopted after adequate study and that there was a reasonable basis for the design]). It is plainly evident from the fact that the Court of Appeals and the Appellate Division have both continued to apply the doctrine of qualified immunity to highway planning and design decisions that Valdez and McLean do not change the long-standing law that highway design decisions are afforded only qualified immunity.
The error in defendant’s argument is further apparent upon a review of the issue actually clarified in McLean and Valdez. In both cases, the Court of Appeals explained that establishing the existence of a duty is a necessary element of a negligence claim. Where negligence is alleged in the performance of either ministerial or quasi-judicial discretionary functions, a plaintiff must show that an agency of the government owed him or her a special duty beyond that owed to the public at large, and one means of doing so is to establish the existence of a special relationship between the injured person and the governmental entity (see Valdez, 18 NY3d at 75; McLean, 12 NY3d at 199, 202-203). By contrast, no special relationship need be demonstrated in a claim involving negligent highway design decisions because municipalities owe a continuing nondelegable duty to construct or maintain public roadways in a reasonably safe condition that is imposed by statute (see Fulgum v Town of Cortlandt, 2 AD3d 775 [2003], citing Highway Law § 140, Thompson v City of New York, 78 NY2d 682, 685 [1991]).
If an injured party establishes all of the elements of a negligence claim — including the existence of a duty of care — a governmental entity may still be able to avoid liability if an immunity defense is available. There is no immunity for ministerial acts (see Valdez, 18 NY3d at 75-78; McLean, 12 NY3d at *861 202-203; see also Arteaga, 72 NY2d at 216). For discretionary-acts of a judicial or quasi-judicial nature, a governmental entity will enjoy absolute immunity only if it timely raises the defense of governmental immunity and shows that the challenged action actually involved the exercise of discretion (see Valdez, 18 NY3d at 76). It is only the potential availability of absolute immunity — a defense which must be timely asserted and proved— that led the Court of Appeals to state that there is never liability for acts of a discretionary quasi-judicial nature. The Court noted that
“[a]s we recently observed in McLean v City of New York (12 NY3d at 203), when both of these doctrines [special duty rule and governmental function immunity defense] are asserted in a negligence case, the rule that emerges is that ‘[government action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general’ (see also Dinardo, 13 NY3d at 874). McLean did not announce a new rule — it merely distilled the analysis applied in prior cases such as Lauer (95 NY2d 95; see also Garrett v Holiday Inns, 58 NY2d 253 [1983]).” (Valdez, 18 NY3d at 76-77 [emphasis supplied].)
The Court further noted that the immunity defense is often waived when it is not timely asserted by municipal defendants (id. at 78). For highway design defect claims, a municipality may obtain qualified immunity upon a showing that its decision was a product of the deliberate exercise of discretion (see Madden, 64 AD3d at 1120, citing Norton v Village of Endicott, 280 AD2d 853, 854-855 [2001]).[6]
Thus, Valdez and McLean confirm only that a special relationship is one means of establishing the existence of a duty of *862 care, but that the existence of a special relationship does not constitute an exception to the absolute immunity afforded to discretionary quasi-judicial acts. Defendant’s argument that they mean much more — that the Court of Appeals dramatically expanded the scope of immunity afforded to highway planning and design decisions implicitly, without mentioning decades of long-settled precedent dating back to at least 1883 — is facially preposterous. It is based on quotations taken out of context from cases based on claims unrelated to highway planning and design decisions and overlooks the Court of Appeals’ own observation that neither Valdez nor McLean announce any new rule regarding governmental immunity. Notably, it also ignores the fact that the Court of Appeals and the Appellate Division have continued to apply the doctrine of qualified immunity to design defect claims since Tango, Lauer, McLean, and Valdez. In other words, defendant’s argument completely misrepresents the Court of Appeals’ extensive body of law regarding governmental immunity, and evinces a disregard for, or misunderstanding of, the concept of duty and the distinction between various acts afforded absolute and qualified immunity.
Inasmuch as there has been no change in the law applying qualified immunity to highway design decisions since defendant’s 2007 summary judgment motion was decided, its motion to renew is denied and motion costs are awarded to plaintiffs in the maximum amount of $100 (see CPLR 8106, 8202).
Notices to Admit — Judicial Subpoenas
Defendant moves, pursuant to CPLR 3103, for an order protecting it from allegedly improper demands made in four separate notices to admit served by plaintiffs (see affirmation of Andrew J. Schwab, dated May 23, 2011, exhibit A [first notice to admit, dated Apr. 7, 2011]; exhibit B [second notice to admit, dated Apr. 20, 2011]; exhibit C [third notice to admit, dated Apr. 29, 2011]; exhibit D [fourth notice to admit, also dated Apr. 29, 2011]). Defendant timely responded to the first two notices to admit {id., exhibit E). While defendant’s motion for a protective order is technically timely only with respect to the third and fourth notices to admit (id. 1i 32), it also seeks relief from the first and second (id. Uli 59-87). In light of the fact that defendant’s timely response to the first two notices raised the same objections presented in support of its motion to preclude, the court will consider defendant’s objections to all four notices to admit (see generally Webb v Tire & Brake Distrib., Inc., 13 AD3d 835 [2004]).
*863 With regard to the first and second notices to admit, defendant responded by George G. Raymond, its Highway Superintendent, who: (1) admitted that defendant retained Wallace Ochterski as a forensic engineering expert; (2) denied paragraph two of the first notice to admit and paragraph four of the second notice to admit; and (3) stated that he could not admit or deny the truth of each of the remaining matters, which he asserted were improper demands (see affirmation of Andrew J. Schwab, dated May 23, 2011, exhibit E).
A party may utilize a notice to admit to demand that an adversary admit “the genuineness of any papers or documents . . . or . . . the truth of any matters of fact” (CPLR 3123 [a]). All but two of the demands in the four notices that defendant did not specifically admit or deny ask defendant to admit that Ochterski’s affidavit or defendant’s expert disclosure contain certain statements (see first notice to admit lili 3-6; second notice to admit lilt 2, 3; fourth notice to admit lili 2-11 [collectively, the identified demands]). Drawn from both the affidavit and disclosure notices, the substance of each of the statements that defendant is asked to admit goes improperly to matters at the heart of the controversy in this case (see Voigt v Savarino Constr. Corp., 94 AD3d 1574 [2012], citing Webb). Accordingly, defendant need not respond to the identified demands.[7]
The third notice asks defendant to admit that an attached invoice is a true and accurate copy of an invoice from Chemung Supply Corporation showing the purchase and partial installation of a guiderail at the accident location after the date of the accident. Although defendant characterizes this request as an improper attempt to establish proof that defendant undertook a subsequent remedial measure, plaintiffs properly seek only an admission that the document is genuine (see CPLR 3123 [a]; Bajaj v General Assur., 18 Misc 3d 25, 27 [2007]). An admission that the invoice is genuine would be “subject to all pertinent objections to admissibility which may be interposed at the trial” (CPLR 3123 [b]; see also Bajaj, 18 Misc 3d at 27). Accordingly, defendant is not entitled to an order relieving it of the obligation to respond to the third notice. Defendant’s time to respond *864 to the third notice to admit is extended until July 20, 2012 {see CPLR 3123 [a]; 3103 [b]).
Paragraph one of the fourth notice asks defendant — for the third time — to admit that it retained Ochterski as a forensic engineering expert in this case. Defendant has already twice admitted this fact and, therefore, need not respond to this demand. Accordingly, defendant need not respond to any of the demands made in the fourth notice to admit.
Averring that Ochterski’s testimony and the subpoenaed documents will be necessary to prove the matters for which admissions were sought, plaintiffs cross-move for an
“order stating that the judicial subpoenas directing the witnesses to produce their files on the first day of trial and for Mr. Ochterski to appear and give testimony on the seventh day of trial be held valid for the first and seventh day of the new [sic] trial when set” (affidavit of Arthur H. Thorn, sworn to June 10, 2011, with exhibits A-C, 1Í 33 [copies of referenced subpoenas naming defendant’s expert witnesses — Ochterski, Napoleon and Liske — are attached as exhibit A]).
Plaintiffs’ cross motion is completely unnecessary because CPLR 2305 (a) affords them the right — if they provided reasonable notice of the adjournment — to compel compliance without further process. It also bears noting that plaintiffs failed to submit any proof that the subpoenas were properly served in the first instance, or that plaintiffs provided the persons subpoenaed with notice that the trial was adjourned. Accordingly, plaintiffs’ motion is denied, without prejudice to enforcement of the existing subpoenas — if properly served and upon proof that reasonable notice of the date of the adjourned trial has been provided — or to issuance of new subpoenas.
In light of the fact that the notices to admit served by plaintiffs contained numerous improper demands and, inasmuch as plaintiffs failed to provide any meaningful support for their motion regarding judicial subpoenas, defendant is awarded motion costs of $100.
Based on the foregoing (1) defendant’s motion is granted, to the extent of ordering that it need not respond to the identified demands or to paragraph one of the fourth notice to admit, and is otherwise denied; (2) plaintiffs’ cross motion seeking an order requiring compliance with existing judicial subpoenas is denied, without prejudice; and (3) motion costs of $100 are awarded to defendant.
*865 Evidence Regarding Plaintiffs’ Design Claim
Defendant moves for an order precluding plaintiffs from presenting any evidence at trial: (1) that defendant had notice that the guiderail was in a dangerous condition; (2) of any subsequent remedial measure, including installation of a new guiderail at the accident scene following the accident; and (3) that defendant was negligent in failing to upgrade the guiderail to current design standards. Plaintiffs move for an order permitting amendment of paragraph nine of their bill of particulars to include regulations, standards and guidelines in effect when the guiderail was originally installed.
To prevail on their design claim, plaintiffs must establish that the guiderail did not meet applicable standards when it was installed or that defendant thereafter violated a duty to upgrade the guiderail. Plaintiffs seek leave to amend their bill of particulars to identify design standards in effect when the guide-rail was originally installed. Inasmuch as defendant does not contest plaintiffs’ assertion that the approximate time that the guiderail was constructed was not established until May 4, 2011 — when defendant filed the affidavit of its Highway Superintendent, George Raymond, sworn to April 28, 2011 — plaintiffs’ motion for leave to amend their bill of particulars is granted (see CPLR 3025 [b]; Chiapperini v Grossinger’s Hotel, 176 AD2d 1048 [1991]). They may serve an amended bill of particulars in the form attached to the affidavit of Amanda Kuryluk, sworn to March 14, 2012 (Kuryluk affidavit) as exhibit O, on or before July 20, 2012.
To show that defendant was obligated to upgrade the guide-rail following its initial construction, plaintiffs must show either (1) a history of prior accidents; or (2) that defendant engaged in extensive repairs or reconstruction of the road where the accident occurred (see Madden, 64 AD3d at 1120). Although the evidence submitted to the court to date is insufficient to make either required showing (see id.; see also Vizzini v State of New York, 278 AD2d 562 [2000]), plaintiffs must be allowed the opportunity to produce such evidence at trial. Thus, defendant’s motions to preclude plaintiffs from presenting evidence that defendant had notice — prior to the accident — that the guiderail was in a dangerous condition, or that defendant was negligent in failing to upgrade the guiderail, are premature. Similarly, while it is unlikely that plaintiffs will establish a proper basis for admission of evidence regarding a subsequent remedial measure (see Ramundo v Town of Guilderland, 142 AD2d 50, 54 *866 [1988]), defendant’s motion to preclude plaintiffs from presenting evidence of subsequent remedial measures is premature. Accordingly, defendant’s motions seeking to preclude plaintiffs from presenting the identified evidence at trial are denied, without prejudice.
Sanctions Sought against Defendant’s Attorney
Plaintiffs cross-move on notice to defendant for an award of attorneys’ fees and costs and the imposition of sanctions pursuant to part 130 of the Rules of the Chief Administrator of the Courts (22 NYCRR), seeking reimbursement for the cost of opposing defendant’s motions to reargue and for leave to file a late summary judgment motion. Both of plaintiffs’ motions seeking sanctions relate to defendant’s quest to have the court render a determination on the merits regarding its statute of limitations defense prior to trial, which — in light of the Appellate Division’s determination that this court’s comments on that issue in the prior order did not constitute the law of the case — was reasonable. The court granted defendant’s motion to reargue for that purpose; therefore, sanctions will not be imposed.
Conclusion
Based on the foregoing, it is ordered that
1. The motions made by defendant by notice of motion dated May 3, 2011 are decided as follows:
a. The motion to reargue is granted and, upon reargument, the court adheres to its original determination.
b. All other motions are denied in their entirety, and plaintiffs are awarded motion costs of $100.
2. The motions made by defendant by notice of motion dated May 23, 2011 are decided as follows:
a. For leave to file a late summary judgment motion is denied.
b. For a protective order regarding the notices to admit, is granted to the extent of ordering that defendant need not respond to the above-defined identified demands or to paragraph one of the fourth notice to admit and extending the time to respond to the third notice to admit to July 20, 2012, and is otherwise denied.
c. For an order precluding plaintiffs from presenting evidence that defendant was on notice — prior to the accident — that the guiderail was in a dangerous condition is denied, without prejudice.
d. For an order precluding plaintiffs from presenting evidence of a subsequent remedial measure is denied, without prejudice.
*867 e. For an order precluding plaintiffs from presenting evidence that defendant was negligent in upgrading the guiderail to current design standards is denied, without prejudice.
f. For an award of costs and attorneys’ fees for responding to plaintiffs’ notices to admit is denied.
3. Plaintiffs’ motion, made by notice of cross motion dated June 10, 2011, seeking an award of costs and fees for opposing defendant’s motion dated May 3, 2011 is denied.
4. The following actions are taken with respect to plaintiffs’ motions, made by a second notice of cross motion dated June 10, 2011:
a. The motion seeking an award of costs and attorneys’ fees for opposing defendant’s motion dated May 23, 2011 is denied.
b. The motion seeking an order directing that certain judicial subpoenas be valid for the first and seventh day of trial when a new date for trial is set is denied, without prejudice, and defendant is awarded motion costs of $100.
5. Plaintiffs’ motion, made by notice of motion dated March 14, 2012, for leave to amend their bill of particulars is granted; plaintiffs may serve an amended bill of particulars in the form attached to the Kuryluk affidavit as exhibit O, on or before July 20, 2012.
6. The motions made by defendant by notice of motion dated April 6, 2012 are denied in their entirety, and plaintiffs are awarded motion costs of $100.

. A summary of the relevant facts in this action may be found in Madden v Town of Greene (64 AD3d 1117 [2009]).

. By letter dated May 7, 2012, defendant’s counsel improperly attempted to submit, without obtaining consent of the court, additional argument on the statute of limitations issue — which was deemed submitted on return of the *854 relevant motions on June 24, 2011 — and its motion to renew — which was deemed submitted on the return date of April 16, 2012. The letter has not been considered in deciding the pending motions.

. Defendant’s motion to reargue was made when it was served by mail on May 3, 2011 (see CPLR 2211), 34 days after the prior order, with notice of entry, was served on plaintiffs by mail sent by defendant on March 30, 2011. Inasmuch as the prior order was served by mail, defendant is entitled to the five-day extension afforded by CPLR 2103 (b) (2) (see Dime Sav. Bank of N.Y., FSB v Halo, 210 AD2d 572 [3d Dept 1994]; cf. Thompson v Cuadrado, 277 AD2d 151 [1st Dept 2000]). Accordingly, defendant’s motion to reargue is timely (see CPLR 2221 [d]). Moreover, even if defendant’s motion to reargue was technically untimely, the court may exercise its discretion to entertain the motion because defendant’s appeal of the prior order was pending and unper *855 fected when its motion to reargue was made (see Terio v Spodek, 63 AD3d 719 [2009]; Itzkowitz v King Kullen Grocery Co., Inc., 22 AD3d 636 [2005]; Garcia v The Jesuits of Fordham, 6 AD3d 163 [2004]; Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2221:8, at 285-286; see also Kovach v Hurlburt, 288 AD2d 727 [2001] [court possesses continuing jurisdiction over its interlocutory orders]).

. It is instructive that counsel did not cite — and the court has been unable to locate — a single case where a negligent highway design claim was dismissed as untimely, while there are numerous cases where negligent design claims were litigated based on conditions that were designed and constructed many years prior to the accidents at issue, without any consideration that they may have been time-barred (see e.g. Jones v County of Niagara, 15 AD3d 1002 [2005] [guiderail reconstructed in 1971]; Winney v County of Saratoga, 8 AD3d 944 [2004] [guiderail was removed in the 1980s; accident occurred in 1992]; Temple, 228 AD2d 938 [1996] [road, which may have been reconstructed, was originally constructed approximately 50 years prior to the accident]; Merchant, 194 AD2d 1031 [1993] [road had been part of defendant’s highway system for a number of years and was reconstructed approximately two years prior to the accident]; cf. Liston v Town of Newburgh, 90 AD3d 861 [2011] [claim for negligent installation of a storm drainage system that subsequently flooded — for which, unlike roads, the municipality does not have a continuing duty to maintain in a safe condition — arose upon construction of the system]; Smith v Town of Long Lake, 40 AD3d 1381 [2007] [negligence claim arose when street was repaved because it alleged that defendant had affirmatively created the defective condition — no defective design claim was asserted]; Regatta Condominium Assn. v Village of Mamaroneck, 303 AD2d 737 [2003] [claim for negligent design and construction of a condominium complex — for which, unlike roads, the municipality does not have a continuing duty to maintain in a safe condition — arose upon construction of the complex]).

. Dinardo — a case analogous to a police protection case because the plaintiff teacher alleged that she had been injured due to her employer’s failure to honor promises it had made to remove an aggressive student from her classroom — does not support defendant’s argument that absolute immunity has been extended to all discretionary governmental functions. In Dinardo, the Court held only that plaintiff failed to establish the existence of a special relationship necessary to support a cause of action for negligence. Having found that there was no liability because no duty was owed plaintiff, the Court did not reach the issue of immunity.

. In this case, the Appellate Division held that defendant “did not establish its entitlement to qualified immunity as a matter of law for its highway planning decisions with regard to the original design and placement of the guardrail because it did not show that these determinations resulted from a deliberate decision-making process” (Madden, 64 AD3d at 1120 [internal quotation marks and citation omitted]). As previously noted, to obtain absolute immunity for discretionary acts requires a showing that they involved the exercise of discretion. Thus, even if defendant is correct in its contention that the law has changed to provide absolute — rather than qualified — immunity for highway planning decisions, the determination that it has thus far failed to show that its decisions regarding the original design and placement of the guiderail involved the exercise of discretion means that it likewise has failed to establish entitlement to absolute immunity as a matter of law.

. The fourth paragraph in the second notice to admit asks defendant to admit that it “was on notice that the guide rail at the accident scene was inadequate prior to the happening of the accident.” Although defendant denied the truth of this statement, it bears noting that this request is overbroad, because “inadequate” is not defined, and that it also improperly goes to matters that may be at the heart of the controversy.